# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NEFTALI LANDIN-ZAVALA,
                    *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 04-70765

Agency No.
A74-413-910

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 18, 2007—Pasadena, California

Filed May 25, 2007

Before: Jerome Farris and Ronald M. Gould, Circuit Judges,
and Kevin Thomas Duffy,* District Judge.

Opinion by Judge Duffy

---

*The Honorable Kevin Thomas Duffy, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

## COUNSEL

Kevin A. Bove, Escondido, California, for the petitioner.

Nancy Friedman, United States Department of Justice, Washington, DC, for the respondent.

---

**OPINION**

DUFFY, District Judge:

Neftali Landin-Zavala ("Petitioner"), a native and citizen of Mexico, petitions for the review of a final order denying his application for cancellation of removal under section 240A(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b). The order was entered by the Board of Immigration Appeals (the "Board") on January 23, 2004, affirming Immigration Judge Ignacio P. Fernandez's decision of September 9, 2002. Petitioner argues that neither his formal order of exclusion nor his voluntary return to Mexico subsequent to apprehension by the U.S. border patrol later that month ended his continuous physical presence in the United States for purposes of the cancellation of removal statute. We find Petitioner's arguments to be without merit, and the petition is denied.

According to Petitioner's testimony, he first came to the United States in August 1990, and was apprehended by the (former) Immigration & Naturalization Service ("INS") border patrol, who allowed him to return to Mexico voluntarily. Shortly thereafter, he reentered the United States and remained until 1995 when he went to Mexico to visit his mother. He returned to the United States approximately a month later and remained until 1996, when he again traveled to Mexico. Upon Petitioner's attempted return, he was apprehended by the INS and placed in exclusion proceedings. On June 12, 1996, an Immigration Judge ordered that Petitioner be "excluded and deported" from the United States. *See* Order of Immigration Judge Zsa Zsa DePaolo, June 12, 1996. Several days after his deportation, Petitioner reentered the United States, and was again apprehended by the INS at the border.

On this occasion, he was temporarily detained and then allowed to voluntarily return to Mexico. A few days after his return, Petitioner yet again illegally entered the United States, and remained undiscovered until the INS commenced removal proceedings against him in February of 2002.

In response to the most recent removal proceedings, Petitioner applied for cancellation of removal for certain nonpermanent residents pursuant to section 240A(b)(1) of the INA, 8 U.S.C. § 1229b(b)(1). Judge Fernandez denied Petitioner's application for cancellation of removal, finding that his accrued period of physical presence was interrupted in June of 1996, both when he was deported to Mexico and when he voluntarily departed later in the month. Petitioner appealed to the Board, who affirmed Judge Fernandez's decision, without opinion, on January 23, 2004.

This court reviews the Board's non-discretionary factual determinations, including the determination of continuous physical presence, for "substantial evidence." *See Ibarra-Flores v. Gonzales*, 439 F.3d 614, 618 (9th Cir. 2006) (quoting *Lopez-Alvarado v. Ashcroft*, 381 F.3d 847, 850-51 (9th Cir. 2004)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003), *amended by* 339 F.3d 1012 (9th Cir. 2003)). The Board's decision that Petitioner did not accrue the requisite ten years of continuous physical presence for purposes of the cancellation of removal statute was supported by substantial evidence, and its decision will be affirmed.

**[1]** The Illegal Immigration Reform and Immigrant Responsibility Act (the "IIRIRA"), Pub. L. 104-208, 110 Stat. 3009 (1996) provides for cancellation of removal when an alien who is not a lawful permanent resident can demonstrate, among other things, that his "removal would result in exceptional and extremely unusual hardship to the alien's spouse,

parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence," and that he has had continuous physical presence in the United States for the ten years prior to either the date he applied for cancellation of removal or when he was served with a notice to appear. 8 U.S.C. §§ 1229b(b)(1) and (d)(1).[1] Pursuant to 8 U.S.C. § 1229b(b)(1):

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
>
> (A)   has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B)   has been a person of good moral character during such period;
>
> (C)   has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
>
> (D)   establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

---

[1]The continuous physical presence requirement was initially established through a 1948 amendment to the Alien Act of 1940. The argument purported in favor of this amendment was that it was necessary to provide an opportunity for relief to individuals who have resided in the United States for many years, but were nevertheless technically deportable. S. Rep. No. 80-1204 (1948). *See also Tapia v. Gonzales*, 430 F.3d 997, 1000 (9th Cir. 2005).

Petitioner's executed order of exclusion and subsequent deportation to Mexico, as well as his voluntary return to Mexico after his apprehension by INS officers later in the month, were clearly sufficient to end his continuous physical presence in the United States.

**[2]** Not every departure from the United States constitutes a break in an alien's accrual of "continuous physical presence" for purposes of the cancellation of removal statute. *See Tapia v. Gonzales*, 430 F.3d 997, 998 (9th Cir. 2005) ("A short departure from the United States, such as a brief return to the alien's native country for family reasons, does not necessarily interrupt the accrual of an alien's period of physical presence in the United States, pursuant to an exception for brief absences provided in 8 U.S.C. § 1229b(d)(2)."). Although an absence for a period in excess of 90 days breaks an alien's continuity of presence, 8 U.S.C. § 1229b(d)(2), an absence of shorter duration does not necessarily have the same effect.

**[3]** In *Tapia* and *Ibarra-Flores v. Gonzales*, 439 F.3d 614 (9th Cir. 2006), this Court held that being turned away at the border by immigration officials does not have the same effect as an "administrative voluntary departure"[2] and does not itself interrupt the accrual of an alien's continuous physical presence. When an alien leaves pursuant to an administrative voluntary departure:

> [he] leaves with the knowledge that he does so in lieu of being placed in proceedings. The clear objective of an enforced departure is to remove an illegal

---

[2]An "administrative voluntary departure" is a "term of art, denoting a form of relief from removal provided for by statute." *Tapia*, 430 F.3d at 998 n.2. In *Vasquez-Lopez v. Ashcroft*, this court deferred to the Board's conclusion in *In re Romalez-Alcaide*, 23 I. & N. Dec. 423 (BIA 2002) (en banc), and held that an "administrative voluntary departure" interrupted an alien's continuous physical presence. *See Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 972 (9th Cir. 2003) (per curiam).

alien from the United States. There is no legitimate
expectation by either of the parties that an alien
could illegally reenter and resume a period of contin-
uous physical presence.

*See Tapia* 430 F.3d at 1002; *Vasquez-Lopez v. Ashcroft*,
343 F.3d 961, 973 (9th Cir. 2003) (*quoting Romalez-Alcaide*,
23 I. & N. Dec. 423, 429 (BIA 2002) (en banc)). "[A]n agree-
ment to accept voluntary departure is akin to a plea bargain
in which the alien gives up any expectation that the alien can
'illegally reenter and resume a period of continuous physical
presence.' " *Ibarra-Flores*, 439 F.3d at 620 (quoting *Tapia*,
430 F.3d at 1002).

**[4]** In this case, it is not necessary to belabor the issue of
whether Petitioner underwent an "administrative voluntary
departure" in light of the fact that he had been excluded ear-
lier in the same month. The formal exclusion order, stating
that Petitioner was both "excluded" and "deported," ends the
inquiry. In *Romalez-Alcaide*, the Board held that an alien's
continuous physical presence is deemed to end when he is
deported from the United States or when he is compelled to
depart the United States under threat of removal proceedings.
*See Romalez-Alcaide*, 23 I. & N. Dec. at 429. Recently, in
*Juarez-Ramos v. Gonzales*, it was held that even an expedited
removal order was sufficient to interrupt a period of continu-
ous physical presence. See *Juarez-Ramos v. Gonzales*, Nos.
05-72472, 05-75364, 2007 WL 1330910, at *1 (9th Cir. May
8, 2007). It could not be any clearer that the accrual of Peti-
tioner's continuous physical presence was terminated when
the formal exclusion order was entered against him and he
was deported.

**[5]** Petitioner makes the strained argument that, because he
was placed in "exclusion" proceedings,³ he did not make an

---

³Since the enactment of the IIRIRA, "exclusion" and "deportation" pro-
ceedings have been merged into the broader category of "removal" pro-

entry into the United States and therefore was never deported. Petitioner cites no authority in support of his position. *Romalez-Alcaide* opines that "[a]n order of removal is intended to end an alien's presence in the United States, as was an order of deportation under prior law." *See Romalez-Alcaide*, 23 I. & N. Dec. at 426. We adopt this holding, as it makes good sense and comports with the overall objectives of the IIRIRA. We conclude that the order that excluded the Petitioner and Petitioner's deportation pursuant to that order ended his physical presence in the United States.

**[6]** Even if the exclusion order had not sealed Petitioner's fate, this case is clearly distinguishable from *Tapia* and *Ibarra-Flores*. Here, Petitioner was not merely turned around at the border but had been through formal exclusion proceedings before an immigration judge and ordered excluded a month earlier. Undoubtedly Petitioner had no legitimate expectation that he could illegally reenter the United States and resume the accrual of his continuous physical presence after he voluntary departed subsequent to a formal exclusion order. *See, e.g., Vasquez-Lopez*, 343 F.3d at 973. Any other result would defy logic and run afoul of the objectives of the IIRIRA. *See Romalez-Alcaide*, 23 I. & N. Dec. at 429.

**[7]** Petitioner's contention that he fulfilled the requirement of 8 U.S.C. § 1229b(b)(1)(A), and that his application for cancellation of removal should have been granted based on ten years of continuous physical presence, is without merit. Petitioner illegally entered the United States five times since August of 1990. There was an executed order of exclusion, a deportation, an INS arrest, and a voluntary exit due to the

---

ceedings. *See Kalaw v. I.N.S.*, 133 F.3d 1147, 1149 n.2 (9th Cir. 1997). Before the IIRIRA was enacted, there were separate "exclusion" proceedings (for persons seeking admission into the United States) and "deportation" proceedings (for persons who had already entered the United States). However, the exclusion order signed by the immigration judge in June of 1996 stated that the "[a]pplicant has been ordered excluded and *deported* from the United States." (emphasis added).

threat of deportation proceedings that all transpired during the course of the alleged ten years of continuous physical presence at issue. There was more than substantial evidence to properly deny Petitioner's application. The petition is DENIED.