**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellant,*

v.

EDMUNDO LOPEZ-VELASQUEZ,
   *Defendant-Appellee.*

No. 07-30241

D.C. No.
06-cr-00434-KI-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, Senior District Judge, Presiding

Argued and Submitted
June 23, 2010—Pasadena, California

Filed December 7, 2010

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Diarmuid F. O'Scannlain, Sidney R. Thomas,
Susan P. Graber, M. Margaret McKeown,
Kim McLane Wardlaw, Raymond C. Fisher,
Ronald M. Gould, Richard A. Paez, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

19569

---

**COUNSEL**

Karin J. Immergut, United States Attorney, Jonathan S. Haub and Kelly A. Zusman, Assistant United States Attorneys, Portland, Oregon, for the plaintiff-appellant.

Terry Kolkey, Ashland, Oregon, for the defendant-appellee.

---

**OPINION**

CALLAHAN, Circuit Judge:

The district court dismissed the indictment against Edmundo Lopez-Velasquez for illegal reentry on the ground that the immigration judge ("IJ") presiding over his deportation hearing had a duty to inform him of discretionary relief under § 212(c) of the Immigration and Nationality Act. *See* 8 U.S.C. § 1182(c) (1994) (repealed 1996). Under the law as understood at the time of the hearing, Lopez-Velasquez was four years short of the mandatory seven-year domicile

requirement for § 212(c) relief. Lopez-Velasquez contends that his domicile should have been calculated differently, in light of a case we decided a year after his hearing. But, even if we were to accept the calculation suggested by Lopez-Velasquez, he was still eight months short of eligibility.

We hold that an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing. While there may be narrow exceptions where an IJ has a duty to inform an alien of relief for which the alien will become eligible imminently, or where subsequent precedent renders a deportation order invalid, those circumstances are not presented here. Accordingly, we reverse and remand.

## I.   Background

The facts are not in dispute. Lopez-Velasquez, a native and citizen of Mexico, illegally entered the United States during the early 1980s and held a number of seasonal agricultural jobs in Oregon. In November 1986, Congress passed the Immigration Reform and Control Act of 1986 ("IRCA"), which, among other things, created a path to lawful permanent residency for two categories of aliens. *See* Pub. L. No. 99-603, 100 Stat. 3359. One category, which applied to Lopez-Velasquez, was called the Special Agricultural Worker ("SAW") program and was available to aliens who were already working in the United States and had performed at least 90 man-days of agricultural labor during the year ending May 1, 1986. 8 U.S.C. § 1160.[1] Lopez-Velasquez applied for the SAW program in October 1987, was accepted, and was granted temporary resident status. His status was adjusted to lawful permanent resident ("LPR") in December 1990.

---

[1]The other category was a general amnesty program for aliens who had resided continuously in the United States since 1982. 8 U.S.C. § 1255a.

Lopez-Velasquez was convicted three years later in state court for delivery of a controlled substance and served eight months in prison. The INS initiated deportation proceedings based on the conviction. On February 10, 1994, Lopez-Velasquez appeared without counsel before an IJ in a group deportation proceeding and conceded removability. The IJ was informed of the dates on which Lopez-Velasquez received temporary and permanent resident status under SAW. The IJ asked the INS attorney whether he was aware of any relief available to Lopez-Velasquez and the others, and the attorney responded that there did not appear to be any. Lopez-Velasquez was ordered deported to Mexico. The IJ informed Lopez-Velasquez and the others of their right to appeal the decision by filing written notice. Lopez-Velasquez waived his right to appeal and was deported.

Lopez-Velasquez reentered the country at some point and, in 2003, was again deported after pleading guilty to two counts of illegal reentry. Lopez-Velasquez again reentered, and immigration proceedings and the instant criminal case ensued.

In the immigration proceedings, the government charged Lopez-Velasquez with removability. In response, Lopez-Velasquez filed a motion to reopen his 1994 deportation proceedings, arguing that he was denied due process because the IJ did not inform him about the possibility for relief under § 212(c). At the time, § 212(c) provided discretionary relief from deportation for LPRs who had seven consecutive years of "lawful unrelinquished domicile" in the United States and had not served more than five years' imprisonment for one or more aggravated felonies. 8 U.S.C. § 1182(c) (1994). The government moved to reinstate the 1994 deportation order, and the IJ granted the motion. The BIA affirmed, and Lopez-Velasquez appealed. In an unpublished decision, we denied his petition for review. *Lopez-Velasquez v. Mukasey*, 308 F. App'x 236, 237 (9th Cir. 2009) (unpublished).

Meanwhile, Lopez-Velasquez was indicted on one count of illegal reentry under 8 U.S.C. § 1326. He moved to dismiss the indictment on the same basis he argued in his immigration proceedings, i.e., that he was denied due process because the IJ presiding over his 1994 deportation hearing did not inform him about the possibility of § 212(c) relief. The district court agreed, holding that there was a reasonable possibility Lopez-Velasquez was entitled to such relief. Under the law at the time of the deportation hearing, the seven-year domicile requirement for § 212(c) relief was defined as beginning when an alien was granted LPR status, and Lopez-Velasquez had been an LPR for just over three years. But the district court determined that Lopez-Velasquez had a colorable argument that, instead, he began to accrue time when he applied for the SAW program or when SAW was enacted. Lopez-Velasquez would have been eight months short of eligibility even if domicile had begun when he applied for the SAW program; however, the district court concluded that Lopez-Velasquez could have accrued the remaining time during an appeal of the IJ's decision to the BIA.

The district court dismissed the indictment on the basis that the IJ's failure to inform Lopez-Velasquez of the possibility of § 212(c) relief invalidated the deportation order underlying the indictment. On the government's appeal, a three-judge panel of our court affirmed. *United States v. Lopez-Velasquez*, 568 F.3d 1139, 1146 (9th Cir. 2009). We subsequently granted rehearing en banc. *United States v. Lopez-Velasquez*, 599 F.3d 925 (9th Cir. 2010).

## II.   Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. We review a collateral attack to a deportation order de novo. *United States v. Ahumada-Aguilar*, 295 F.3d 943, 947 (9th Cir. 2002).

### III.   Analysis

**[1]** This case concerns the extent of an IJ's duty to inform aliens of their eligibility for relief from removal. Immigration regulations require an IJ to inform an alien of "apparent eligibility" for relief. 8 C.F.R. § 1240.11(a)(2). We have interpreted "apparent eligibility" to mean "where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws—as IJs no doubt are—raises a reasonable possibility that the petitioner may be eligible for relief." *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989). We have repeatedly held that an IJ's failure to so advise an alien violates due process and can serve as the basis for a collateral attack to a deportation order where, as here, the order is used as the predicate for an illegal reentry charge under § 1326. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004).[2]

**[2]** Lopez-Velasquez does not actually claim that he was eligible for § 212(c) relief under the applicable law at the time of his deportation hearing; he unquestionably was not. Instead, he argues that he could have made a colorable argument for interpreting the seven-year domicile requirement as

---

[2]Although we and the Second Circuit have held that an IJ's failure to inform an alien of possible eligibility for discretionary relief constitutes a due process violation, most other circuits have adopted a more limited interpretation of the IJ's duty to inform. *See United States v. Copeland*, 376 F.3d 61, 70-73 (2d Cir. 2004) (holding that failure to advise an alien of possible forms of relief may violate due process). *But see United States v. Santiago-Ochoa*, 447 F.3d 1015, 1020 (7th Cir. 2006) (stating that an alien does not have a constitutional right to be informed of eligibility for discretionary relief); *Bonhometre v. Gonzales*, 414 F.3d 442, 448 n.9 (3d Cir. 2005) (same); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc) (same); *United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002) (same); *see also Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (stating that an alien's eligibility for discretionary relief is not a constitutionally protected interest); *Escudero-Corona v. INS*, 244 F.3d 608, 615 (8th Cir. 2001) (same); *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000) (same).

starting when he applied for SAW, which would give him six years and four months of domicile at the time of the hearing. Lopez-Velasquez argues he was close enough to eligibility that the IJ should have considered that he could become eligible by accruing the additional time during an appeal to the BIA.[3]

Our evaluation of Lopez-Velasquez's claim that the IJ had a duty to advise him of the possibility of relief under § 212(c) is informed by the history of the law governing eligibility for such relief. Prior to its repeal in 1996, § 212(c) granted the Attorney General discretion to waive the exclusion of LPRs "who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years," as long as the LPRs had not served an imprisonment term of five years or more for one or more aggravated felonies. 66 Stat. 187 (1952 INA) (later codified as 8 U.S.C. § 1182(c) (repealed 1996)). Although the statute on its face applied only to aliens in exclusion proceedings, the INS extended relief under § 212(c) to aliens in deportation proceedings. *Castillo-Felix v. INS*, 601 F.2d 459, 462 (9th Cir. 1979).[4]

In our 1979 opinion in *Castillo-Felix*, we determined what it means to have "lawful unrelinquished domicile" for pur-

---

[3]At the time of Lopez-Velasquez's hearing, an alien could continue to accrue time toward domicile for purposes of § 212(c) relief while appealing the IJ's decision to the BIA. *See Foroughi v. INS*, 60 F.3d 570, 575 (9th Cir. 1995). However, when Congress repealed § 212(c) in 1996, it specified that an alien's accrual of time for any residency requirements ends when the alien is served a notice to appear for removal proceedings or commits an offense that renders him inadmissible or removable. 8 U.S.C. § 1229b(d)(1).

[4]Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), immigration law distinguished between "exclusion" and "deportation" proceedings. *See Landin-Zavala v. Gonzales*, 488 F.3d 1150, 1153 n.3 (9th Cir. 2007). IIRIRA encompasses both under a broader category of "removal" proceedings. *See id.*

poses of § 212(c) relief. There, the petitioner argued that an alien could accrue lawful domicile prior to becoming an LPR. *Id.* at 463. We disagreed, reasoning that the INS had always interpreted domicile as beginning with LPR status, its interpretation was entitled to great deference, and its position was not inconsistent with the statutory mandate or congressional policy. *Id.* at 464-67. We held that "to be eligible for [§ 212(c)] relief, aliens must accumulate seven years of lawful unrelinquished domicile after their admission for permanent residence." *Id.* at 467.

The 1986 SAW provisions provided a path to LPR status and made special exceptions to other immigration provisions. 8 U.S.C. § 1160. For example, the SAW provisions created a temporary stay of deportation for aliens who were apprehended by immigration authorities before the SAW application period began, but who were eligible for SAW. *Id.* § 1160(d)(1). SAW did not, however, address relief from deportation under § 212(c) or the definition of domicile. *See id.* § 1160. Further, between SAW's enactment and Lopez-Velasquez's deportation hearing in February 1994, we published no cases that discussed *Castillo-Felix* or domicile.

**[3]** Our 1995 opinion in *Ortega de Robles v. INS*, 58 F.3d 1355 (9th Cir. 1995), was our first deviation from the *Castillo-Felix* definition of domicile. There we considered whether beneficiaries of general amnesty under § 245A, another amnesty program under IRCA, could begin accruing domicile time when they applied for the program. *Ortega de Robles*, 58 F.3d at 1358. We noted that IRCA was enacted after *Castillo-Felix* and, thus, the holding in *Castillo-Felix* did not necessarily apply to aliens obtaining legal status under IRCA. *Id.* We observed that § 245A amnesty applicants intended to remain permanently in the United States while in temporary resident status, because it was only a stepping stone to gaining LPR status. *Id.* at 1360-61. We concluded that, for § 245A applicants, domicile began with the date of their application for amnesty. *Id.* Although we acknowledged

that the SAW provisions were also enacted under IRCA, we did not consider whether our reasoning would apply to SAW applicants. *See id*. at 1359 n.5.

The BIA subsequently issued a decision stating that it would follow *Ortega de Robles* for § 245A applicants within our circuit. *In re Cazares-Alvarez*, 21 I. & N. Dec. 188, 192 (B.I.A. 1996). Shortly thereafter, relief under § 212(c) was repealed by IIRIRA. *See Ubaldo-Figueroa*, 364 F.3d at 1044.

**[4]** With this history in mind, we turn to whether there was a reasonable possibility that Lopez-Velasquez was eligible for relief under § 212(c) when he appeared before the IJ in 1994. At that time, longstanding Ninth Circuit and BIA precedent provided that domicile was measured from the date an alien received LPR status, and could not be considered to start before then. *Castillo-Felix*, 601 F.2d at 463-67; *In re S*, 5 I. & N. Dec. 116, 118 (B.I.A. 1953). That precedent rendered Lopez-Velasquez almost four years short of the seven-year eligibility requirement. Lopez-Velasquez was ineligible for relief, as a matter of law, at the time of the hearing.[5]

**[5]** Yet Lopez-Velasquez relies on *Ortega de Robles*, which was decided a year after his hearing, to show that there was a colorable argument that the IJ should have calculated his domicile from the date he applied for SAW. His reliance is misplaced for two reasons. First, even under the measure of domicile in *Ortega de Robles*, Lopez-Velasquez was eight months short of the seven-year requirement and, thus still ineligible as a matter of law. While there may be exceptional circumstances under which we would conclude that an alien's

---

[5]Prior to Lopez-Velasquez's hearing, the Third, Fourth, and Tenth Circuits had also followed the BIA's interpretation, while only the Second Circuit had held that domicile could begin at some point prior to LPR status. *Michelson v. INS*, 897 F.2d 465, 469 (10th Cir. 1990); *Reid v. INS*, 756 F.2d 7, 10 (3d Cir. 1985); *Chiravacharadhikul v. INS*, 645 F.2d 248, 250-51 (4th Cir. 1981); *Lok v. INS*, 548 F.2d 37, 39-41 (2d Cir. 1977).

imminent eligibility triggered the IJ's duty to inform the alien of the possibility for relief, the eight-month gap here does not present such circumstances.

**[6]** Nonetheless, Lopez-Velasquez argues that the IJ had a duty to inform him of relief because he could have accrued the remaining eight months by appealing to the BIA. The IJ had no duty to inform him of that possible avenue for relief because there was no indication that he had a substantive basis for pursuing an appeal. *See, e.g., INS v. Rios-Pineda*, 471 U.S. 444, 450 (1985) ("The purpose of an appeal is to correct legal errors which occurred at the initial determination of deportability; it is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites."); 8 C.F.R. § 1003.1(d)(2)(i)(D) (authorizing BIA to summarily dismiss an appeal filed for an improper purpose, such as delay); *cf. Valencia v. Mukasey*, 548 F.3d 1261, 1263-64 (9th Cir. 2008) (explaining that IJs have no duty to inform aliens of all possible ways of obtaining relief; otherwise, aliens would be encouraged to file frivolous applications, burdening the immigration system and possibly resulting in frivolousness determinations).[6]

In a different context, we have recognized that an alien or an attorney might make a strategic decision to use a plausible appeal to accrue time toward eligibility. We did so in the context of deciding whether an alien was prejudiced by a due process violation in the deportation proceedings, such as an invalid waiver of appeal or waiver of counsel. *See, e.g., Ahumada-Aguilar*, 295 F.3d at 950-51 (concluding that alien was prejudiced by his invalid waiver of counsel because counsel would have urged him to bring an appeal to accrue time toward eligibility); *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1085-86 (9th Cir. 1996) (concluding that alien was prejudiced by invalid waiver of appeal at deportation

---

[6]As noted, aliens may no longer accrue time toward eligibility for relief on appeal in most cases. 8 U.S.C. § 1229b(d)(1) (effective 1997).

hearing because, if he had appealed, he could have accrued eligibility); *see also United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (to attack a deportation order collaterally, an alien must demonstrate a due process violation and resulting prejudice). Here, Lopez-Velasquez has failed in the first instance to establish a due process violation, because the IJ had no duty to inform him of relief for which he was not eligible and there were no other circumstances triggering such a duty.

**[7]** Second, only under narrow circumstances have we applied subsequent precedent in reviewing a deportation order. *See, e.g., United States v. Leon-Paz*, 340 F.3d 1003, 1005-07 (9th Cir. 2003) (determining that the alien's due process rights were violated because the IJ informed him he was ineligible for relief, which was an error of law in light of the Supreme Court's subsequent decision in *INS v. St. Cyr*, 533 U.S. 289 (2001)). *But see Avila-Sanchez v. Mukasey*, 509 F.3d 1037, 1040 (9th Cir. 2007) (rejecting argument that subsequent precedent invalidated a deportation order that was correctly decided under existing BIA precedent). In general, "[w]hen intervening law renders an alien eligible for discretionary relief for which he was ineligible at the time of his deportation hearing, the proper remedy is for the [alien] . . . to file a motion to reopen." *Valderrama-Fonseca v. INS*, 116 F.3d 853, 857 (9th Cir. 1997) (stating that the IJ did not err in failing to advise the alien of relief because the law making the alien eligible had not yet been enacted at the time of the deportation hearing). Lopez-Velasquez's prior motion to reopen was unsuccessful. There are no grounds to invalidate Lopez-Velasquez's deportation order based on *Ortega de Robles* because it does not necessarily apply to SAW applicants and would not have made it reasonably possible that he was eligible for relief at the time of the hearing.

In defining the IJ's duty to inform, we have focused on whether the factual circumstances in the record before the IJ suggest that an alien could be eligible for relief. In *Moran-*

*Enriquez*, we explained that "IJs are not expected to be clair-voyant; the record before them must fairly raise the issue: Until the alien himself or some other person puts information before the judge that makes such eligibility apparent, this duty does not come into play." 884 F.2d at 422 (internal quotation and alteration marks omitted). On this basis, we have concluded that where the record demonstrates, or at least implies, a factual basis for relief, the IJ's duty is triggered. *Id.* at 422-23. For example, where the record before the IJ reveals that the alien is an immediate relative of a United States citizen or LPR, the IJ has a duty to inform the alien of possible relief based on that relationship. *Id.*; *Arrieta*, 224 F.3d at 1079.

**[8]** On the other hand, the IJ is not required to advise an alien of possible relief when there is no factual basis for relief in the record. *See Valencia*, 548 F.3d at 1262-63. In *Valencia*, we concluded that the IJ was not required to inform an alien that she could apply for asylum, withholding of removal, or relief under the Convention Against Torture because the alien had not indicated any plausible basis for those forms of relief. *Id.* A rule to the contrary, we noted, would invite meritless applications for relief, particularly "since an application may well extend deportation proceedings for years." *Id.* at 1264 (internal quotation marks omitted).

All of the relevant facts were known to the IJ at the time of Lopez-Velasquez's deportation hearing in February 1994. Lopez-Velasquez had become an LPR under the SAW program in December 1990, making him almost four years short of fulfilling the seven-year domicile requirement under existing law. The fact that Lopez-Velasquez was a beneficiary of the SAW program did not raise an inference of § 212(c) eligibility, because the SAW statute did not contain an exception to the longstanding definition of domicile and, until *Ortega de Robles*, there was no suggestion from the BIA or this court that the definition could be different.[7] In light of the facts

---

[7] Lopez-Velasquez also asserts there is a colorable argument for measuring SAW beneficiaries' domicile as beginning at the date of SAW's enact-

known by the IJ at the 1994 hearing, the IJ did not have a duty to inform Lopez-Velasquez of relief for which he was ineligible.

## IV.  Conclusion

**[9]** The IJ's duty is to inform the alien of "a reasonable possibility that the petitioner may be eligible for relief." *Moran-Enriquez*, 884 F.2d at 423. This duty did not require the IJ to inform Lopez-Velasquez of relief for which he was not then eligible and for which he would become eligible only with a change in law *and* the passage of eight months. Rather, an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing. Because Lopez-Velasquez has not established that his deportation order was invalid, his motion to dismiss his § 1326 indictment was improperly granted. For the foregoing reasons, we reverse the district court's order granting the motion to dismiss the indictment.

### REVERSED AND REMANDED.

---

ment, in which case he would have met the seven-year requirement at the time of his hearing. However, Lopez-Velasquez offers no authority for this assertion, or for the general proposition that an alien who entered the country illegally could be considered lawfully present before taking an affirmative step to change his or her status. Moreover, Lopez-Velasquez has not provided a rationale for interpreting domicile for SAW beneficiaries more expansively than we did for general amnesty beneficiaries in *Ortega de Robles*. We have previously noted that, to the contrary, general amnesty beneficiaries might be treated more favorably because typically they "have stronger durational ties to the United States." *Yao v. INS*, 2 F.3d 317, 322 (9th Cir. 1993) ("While SAW applicants need prove residence in the United States for but ninety workdays, [general amnesty] applicants must establish continuous physical presence since 1982, a period approaching five years."). Accordingly, we are unpersuaded.