GRABER, Circuit Judge,
with whom McKEOWN, Circuit Judge, and LYNN, Chief District Judge, join, concurring:
I concur in the opinion because it faithfully applies the law of our circuit. I write separately to express my view that our law with respect to the scope of collateral challenges under 8 U.S.C. § 1326(d) has strayed increasingly far from the statutory text and that we are out of step with our sister circuits’ correct interpretation. For that reason, we should rehear this case en banc to correct our course.
The panel opinion sets forth the background of this case. I emphasize only one aspect of the facts. While incarcerated in 1998 after pleading guilty to a one-count indictment for federal conspiracy, Defendant Jose Ochoa was served with a notice to appear. The notice specifically charged that Defendant’s conspiracy conviction constituted both an aggravated felony and a firearms offense under the Immigration and Nationality Act. At his 1999 hearing, the immigration judge (“U”) repeatedly apprised Defendant of his appellate rights, *1019 both orally and in writing. The IJ determined, on the record, that Defendant’s conviction matched the two removability categories contained in the notice to appear. And after being offered the opportunity to appeal or, instead, to accept the decision, Defendant chose to accept the decision. After completing his prison sentence for the underlying crime, he was removed from the United States.
It was not until 2014, after he was indicted for illegal reentry, that Defendant first challenged the IJ’s conclusion that his conspiracy conviction was a categorical match to the aggravated felony and firearms offense provisions in the immigration statutes.
A. The Collateral Attack Provision
Defendant challenges his illegal reentry conviction by invoking the “collateral attack” provision of the illegal reentry statute:
In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(S) the entry of the order was fundamentally unfair.
8 U.S.C. § 1326(d). An order is “fundamentally unfair” under (d)(3) if “(1) [a defendant’s] due process rights were violated by defects in [the] underlying deportation proceeding, and (2) [the defendant] suffered prejudice as a result of the defects.” United States v. Garcia-Martinez, 228 F.3d 956, 960 (9th Cir. 2000) (internal quotation marks omitted). Subsection (d) was “added in direct response to [United States v. Mendoza-Lopez, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ].” United States v. Barajas-Alvarado, 655 F.3d 1077, 1082 n.6 (9th Cir. 2011). Prior to Mendoza-Lopez, it was not clear under what circumstances, if any, an illegal reentry defendant could challenge the underlying “order of deportation” when the “prior deportation is an element of the crime.” 481 U.S. at 833, 107 S.Ct. 2148. That decision made clear that due process requires “some meaningful review of the administrative proceeding,” id. at 837-38, 107 S.Ct. 2148, which the statute now affords.
B. The Meaning of § 1826(d)(1) and (2)
Section 1326(d) places the burden on the alien to demonstrate three things in order to challenge collaterally the validity of the deportation order underlying a charge of illegal reentry. By using the conjunction “and,” Congress signified that the alien must establish that all three conditions are met. See United States v. Soto-Mateo, 799 F.3d 117, 120 (1st Cir. 2015) (noting that “[t]he elements of 1326(d) are conjunctive, and an appellant must satisfy all of those elements in order to prevail”), cert. denied, — U.S.-, 136 S.Ct. 1236, 194 L.Ed.2d 230 (2016); United States v. Wilson, 316 F.3d 506, 509 (4th Cir. 2003) (same); United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002) (same).
The text of the statute plainly contains two different kinds of provisions. As noted, paragraph (d)(3) is substantive. A deportation order may be challenged if the entry of the order was “fundamentally unfair,” that is, if it violated due process and prejudiced the alien. Garcia-Martinez, 228 F.3d at 960.
But paragraphs (d)(1) and (2) describe purely procedural criteria. The alien *1020 is required to have exhausted any available administrative remedies, and “the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review.” 8 U.S.C. § 1826(d)(2) (emphasis added). Subsection (d) is designed to allow collateral attack only as a safety valve for those who could not seek judicial review at the time the original removal .order issued.
Here, it is clear that Defendant cannot fulfill the terms of the statute. He had an opportunity to seek administrative and judicial review. He knew that he had the opportunity, because the IJ explained his appellate rights accurately, both orally and in writing. An appeal would have allowed the agency and the courts to consider on the merits the arguments that he now makes. Whether those arguments would have succeeded at the time is beside the point; the statute disallows a collateral attack if Defendant had the opportunity to obtain administrative and judicial review and thus the opportunity to challenge the categorization of his conviction as an aggravated felony and a firearms offense. He simply decided to waive his right to appeal.
As I will explain, though, our court— unlike our sister circuits — has ignored the procedural focus of paragraphs (d)(1) and (2) and essentially read them out of the statute. Partly as a consequence of failing to demand adherence to (d)(1) and (2), our court has made a second error: labeling as “fundamentally unfair” a decision that was correct under extant precedent but as to which the governing law changed later. The history of how the demise of paragraphs (d)(1) and (2) occurred, step by step like a frog subjected to increasingly hot water, will be recounted below.
C. Discretionary Relief
We have long held that, when an IJ erroneously informs an alien that he or she is ineligible for discretionary relief, the first two prongs of § 1826(d) are satisfied and that, under § 1326(d)(3), the alien’s due process rights were violated; the remaining question is whether the alien has demonstrated the prejudice required under § 1326(d)(3). For example, in United States v. Muro-Inclan, 249 F.3d 1180, 1181 (9th Cir. 2001), an illegal reentry defendant was not informed of his “possible eligibility for a waiver of deportation” at his removal hearing. On collateral attack of that removal order, we held that “a waiver is not ‘considered and intelligent’ when ‘the record contains an inference that the petitioner is eligible for relief from deportation,’ but the Immigration Judge fails to ‘advise the alien of this possibility and give him the opportunity to develop the issue.’ ” Id. at 1183 (quoting United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000)). In that case, despite the lack of a knowing and intelligent appellate waiver, we could not call the order “fundamentally unfair” under § 1326(d)(3). Id. at 1185-86.
Even in this analysis, our court is an outlier. Several years ago, we noted that our precedents characterizing “an IJ’s failure to inform an alien of possible eligibility for discretionary relief [as] a due process violation” take a minority position. United States v. Lopez-Velasquez, 629 F.3d 894, 897 n.2 (9th Cir. 2010) (en banc). Although we and the Second Circuit hold this view, the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits do not appear to consider such failures to be due process violations. Id.[1] The First Circuit has now *1021 adopted the majority position as well. See Soto-Mateo, 799 F.8d at 123 (joining “a majority of circuits [that] have rejected the proposition that there is a constitutional right to be informed of eligibility for — or to be considered for — discretionary relief’ (quoting United States v. Santiago-Ochoa, 447 F.3d 1015, 1020 (7th Cir. 2006))); see also United States v. Cordova-Soto, 804 F.3d 714, 723 (5th Cir. 2015) (describing the “majority of circuits,” but not the Ninth, as finding no constitutional right to be informed of eligibility for discretionary relief), cert. denied, — U.S. -, 136 S.Ct. 2507, 195 L.Ed.2d 840 (2016); United States v. Torres, 383 F.3d 92, 104 (3d Cir. 2004) (noting that failing to apprise an alien of discretionary relief does not violate due process, just as “mere errors of state law” do not violate due process in habeas cases (internal quotation marks omitted)).
D. Plenary Legal Review
Of greater concern to me, however, are the significant additional steps that we have taken, beyond constitutionalizing the right to be informed of discretionary relief. In particular, we have made two innovative jurisprudential moves. First, our precedents permit the retroactive application of intervening changes in law to an underlying removal proceeding, so that the IJ’s then-correct decision is rendered incorrect in hindsight — even when the change in law is announced in our own opinion adjudicating the collateral attack. Second, we also have permitted an illegal reentry defendant to attack collaterally not just the failure of the IJ to explain the potential availability of discretionary relief, but also the very ground on which the alien was removed. In so doing, we characterize a removal order as “fundamentally unfair” under 8 U.S.C. § 1326(d)(3) — finding that the order violates due process and causes prejudice — merely because we have subsequently identified a legal error. Those two innovations combine to compel the result in this case.
Move number one. In United States v. Pallares-Galan, 359 F.3d 1088 (9th Cir. 2004), the defendant in an illegal reentry appeal litigated both the exhaustion issue under § 1326(d) and the question whether his underlying conviction actually constituted an aggravated felony under the modified categorical approach. The defendant had been convicted of several state crimes, and the INS initiated removal proceedings. Id. at 1092. The IJ ruled that one of the defendant’s convictions was an aggravated felony, and the defendant waived his right to appeal. Id. at 1093. After his removal, the defendant was arrested and charged with illegal reentry. Id. He argued that his conviction for a state misdemeanor charge was not an aggravated felony as the IJ had declared. Id.
We held that the defendant’s waiver of his right to appeal “was not ‘considered and intelligent’ because the IJ erroneously informed him that he was not eligible for relief from deportation on account of his 1999 state misdemeanor [conviction].” Id. at 1096. We reasoned that, “[w]here ‘the record contains an inference that the petitioner is eligible for relief from deportation,’ but the IJ fails to ‘advise the alien of this possibility and give him the opportunity to develop the issue,’ we do not consider an alien’s waiver of his right to appeal his deportation order to be ‘considered and intelligent.’” Id. (quoting Muro-Inclan, *1022 249 F.3d at 1182). That passage applied our circuit’s view, described above, that due process requires the IJ to apprise aliens of possible discretionary relief. But I wish to emphasize our method for locating such an “inference” in the record: We conducted the modified categorical analysis in the same decision, decided that the defendant’s underlying conviction was not a categorical match to an aggravated felony, and only then held that the defendant’s waiver was not “considered and intelligent.” Id. at 1099-1101. In other words, we used our own, retroactively applied view of the categorical analysis, on the merits, to justify classifying the prior appellate waiver as not “considered and intelligent” — a classic “bootstrapping” approach.
In effect, we held that a substantive error in the IJ’s legal analysis — raised and discovered only on collateral attack — satisfies the first two prongs of § 1326(d). Pallares-Galan, 359 F.3d at 1104. That result is difficult to square with the requirements of § 1326(d)(1) and (2), which are designed to require that merits arguments be presented to the IJ and argued on appeal in the first instance.
In move number two, we have gone further still. When a collateral challenge implicates an alien’s removability itself, we subsume the “fundamental unfairness” prong of § 1326(d)(3) entirely within our retroactive, de novo legal analysis. For example, in United States v. Camacho-Lopez, 450 F.3d 928, 929 (9th Cir. 2006), a legal permanent resident was convicted of “vehicular manslaughter with gross negligence, in violation of California Penal Code section 191.5(a),” served with a notice to appear alleging removability for an aggravated felony, and ordered removed; he knew about, but waived,' his right to appeal. When the defendant was later found in the United States and charged with illegal reentry under'§ 1326, he moved to dismiss the indictment, arguing that intervening legal developments clarified that his conviction was not for an aggravated felony. Id. Citing Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), and Lara-Cazares v. Gonzales, 408 F.3d 1217 (9th Cir. 2005) — decisions rendered six and seven years after the defendant’s removal order issued — we agreed. Camacho-Lopez, 450 F.3d at 929-30. We noted the government’s concession that those later decisions applied to the 1998 deportation hearing and that the defendant was both “excused from the exhaustion requirement” and “deprived of a meaningful opportunity for judicial review” within the meaning of § 1326(d)(1) and (2). Id. at 930. Addressing the final “fundamentally unfair” prong in § 1326(d)(3), we held that, because the defendant was charged with removability “only for having committed an aggravated felony,” and intervening cases clarified that his crime was not ah aggravated felony, he “was removed when he should not have been and clearly suffered prejudice.” Id. We reversed and remanded with instructions to dismiss the indictment. Id. The intervening change in law satisfied the § 1326(d)(3) requirement that the defendant show a due process violation, and we assumed prejudice from the error.
Reading the cases together, the law of our circuit is that an illegal reentry defendant may invoke later-decided cases to attack an IJ’s finding of removability.[2] See *1023 United States v. Aguilera-Rios, 769 F.3d 626, 631 (9th Cir. 2014) (so holding). Those later-decided cases might include a categorical analysis conducted in another section of the same opinion adjudicating a collateral attack — just as we do in this case. Pallares-Galan, 359 F.3d at 1099-1101. And if we ultimately agree with the illegal reentry defendant on the merits of his collateral attack, we find the removal order fundamentally unfair, assuming that it rested on no other ground. Camacho-Lopez, 450 F.3d at 930. In sum, if we conclude, years later in a collateral attack, employing de novo review, that the IJ erred in finding removability, we hold that all three of § 1326(d)’s requirements are met, even if the defendant could have exhausted administrative remedies, could have appealed the removal order, knew that appeal was available, and failed to appeal. Our progress toward this point was incremental, but the result — a cooked frog — is incompatible with the statute.
E. Other courts’ approaches
Other circuits have not eroded § 1326(d) to such a degree. For example, in Soto-Mateo, the First Circuit noted that, “when ‘performing the collateral attack analysis under § 1326(d), an inquiring court ordinarily should address the initial [ (d)(1) ] test of exhaustion of administrative remedies before going on to the other two tests.’ ” 799 F.3d at 120 (brackets omitted) (quoting United States v. DeLeon, 444 F.3d 41, 45 (1st Cir. 2006)). The court held that the defendant “did not exhaust available administrative remedies” before the IJ, “waived his right to appeal,” and could not avoid that default by “asserting that his waiver was neither knowing nor intelligent.” Id. He “plainly knew what he was doing” when he waived his appellate rights. Id. at 122. Addressing the argument that the defendant would never have waived his appeal “if he had known that he was not removable as an aggravated felon,” the court held, first, that the unsettled state of the law on whether his conviction was an aggravated felony did not matter: “A waiver of rights based on a reasonable interpretation of existing law is not rendered faulty by later jurisprudential developments.” Id. at 123 (citing Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). The court denied this challenge without “reaching] the question of whether he satisfied either the judicial review requirement of [§ ] 1326(d)(2) or the fundamental fairness requirement of [§ ] 1326(d)(3).” Id.
Other courts also read the § 1326(d) requirements differently than we do. See United States v. Gil-Lopez, 825 F.3d 819, 820 (7th Cir. 2016) (refusing to consider an argument that the conviction was not for an aggravated felony because a § 1326 defendant signed an appellate waiver and thus did not exhaust remedies); United States v. Villanueva-Diaz, 634 F.3d 844, 851-52 (5th Cir. 2011) (rejecting a collateral attack because, though intervening decision made the conviction not a removable offense, the “deportation proceedings were not ‘fundamentally unfair’ ”); United States v. Rodriguez, 420 F.3d 831, 834 (8th Cir. 2005) (refusing to entertain a collateral attack because “[a] subsequent change in the law does not render [the defendant’s] waiver of his right to appeal ‘not considered or intelligent’ ”); United States v. Rivera-Nevarez, 418 F.3d 1104, 1105-06 (10th Cir. 2005) (agreeing with the defendant that later-decided statutory interpretation cases were “fully retroactive,” but holding that the defendant still could not show he was deprived of opportunity for judicial review under § 1326(d)(2), so the IJ’s legal error concerning removability *1024 was harmless)[3]; United States v. Martinez-Rocha, 337 F.3d 566, 569-70 (6th Cir. 2003) (finding the § 1326(d) requirements unsatisfied when defendant signed an appellate waiver, noting that “a waiver need not be the best choice under the circumstances in order for it to be ‘considered and intelligent’ ”). We are apparently alone, on the wrong side of an (at least) 6-to-1 circuit split.
This state of affairs is especially surprising because, elsewhere, we readily enforce appellate waivers. In criminal appeals, for example, we foreclose challenges to a sentence when the defendant waived the right to appeal the Sentencing Guidelines determination, because that the alternative “would render meaningless the express waiver of the right” to bring such a challenge. United States v. Medina-Carrasco, 815 F.3d 457, 462 (9th Cir. 2016). Even if a Guidelines calculation was seemingly incorrect, setting aside an explicit waiver “would nullify the waiver based on the very sort of claim it was intended to waive.” Id. (quoting United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007)). “We will enforce a valid waiver even if the claims that could have been made on appeal absent that waiver appear meritorious, because the whole point of a waiver is the relinquishment of claims regardless of their merit.” Id. at 462-63 (internal quotation marks and emphasis omitted).
F. Conclusion
By permitting collateral legal challenges to an IJ’s removability determination in the way that we do, we retroactively label erroneous-only-in-hindsight (but unap-pealed) categorical determinations as “fundamentally unfair,” and as satisfying all three requirements of § 1326(d). See, e.g., Camacho-Lopez, 450 F.3d at 930. Our precedent has the effect of nullifying the procedural requirements of § 1326(d)(1) and (2) and creating in their place a new, substantive right to retroactive de novo review, thereby undermining the finality interests the statute was designed to protect. These anomalies call for en banc consideration to bring our jurisprudence in line with the statute and the other circuits.

. The cases we cited as taking the opposite view are United States v. Santiago-Ochoa, 447 F.3d 1015, 1020 (7th Cir. 2006) (stating that an alien does not have a constitutional right to be informed of eligibility for discretionary relief); Bonhometre v. Gonzales, 414 F.3d 442, 448 n.9 (3d Cir. 2005) (same); United States v. Aguirre-Tello, 353 F.3d 1199, 1205 (10th Cir. *1021 2004) (en banc) (same); United States v. Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2002) (same); see also Smith v. Ashcroft, 295 F.3d 425, 430 (4th Cir. 2002) (stating that an alien’s eligibility for discretionary relief is not a constitutionally protected interest); Escudero-Corona v. INS, 244 F.3d 608, 615 (8th Cir. 2001) (same); Ashki v. INS, 233 F.3d 913, 921 (6th Cir. 2000) (same).

. As we pointed out in Aguilera-Rios, 769 F.3d at 632-33, we have apparently carved out a narrow exception to full retroactivity when the only issue is whether the alien was eligible for relief from removal, as distinct from whether the alien was removable at all. See United States v. Gomez, 757 F.3d 885, 899 (9th Cir. 2014) (considering the law at the time of the defendant's removal order to determine eligibility for relief from removal).

. This conclusion runs directly contrary to our court’s decision in Aguilera-Rios, which rejected the government’s argument that the removal order was valid because it rested on governing law at the time, and only subsequent, intervening decisions invalidated it. We applied the same retroactivity rule that Rivera-Nevarez invoked — even citing that case, 769 F.3d at 631 — and held that, at least where intervening statutory interpretation law rendered an alien “not removable" as of the time of the IJ hearing, that intervening law would be applied retroactively. Id. at 632-33. We never mentioned that the Tenth Circuit in Rivera-Nevarez ultimately rejected the retroactive legal challenge because § 1326(d) still barred it, rendering the original legal error harmless.