**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

C.J.L.G., A JUVENILE MALE,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 16-73801

Agency No.
A206-838-888

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted En Banc December 10, 2018
San Francisco, California

Filed May 3, 2019

Before: Sidney R. Thomas, Chief Judge, and Susan P.
Graber, M. Margaret McKeown, William A. Fletcher,
Richard A. Paez, Marsha S. Berzon, Johnnie B. Rawlinson,
Consuelo M. Callahan, Sandra S. Ikuta, Jacqueline H.
Nguyen and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz;
Concurrence by Judge Paez;
Concurrence by Judge Berzon;
Dissent by Judge Callahan

## SUMMARY[*]

### Immigration

Granting C.J.L.G.'s petition for review of a Board of Immigration Appeals' decision, the en banc court concluded that the Immigration Judge who ordered C.J. removed erred by failing to advise him about his apparent eligibility for Special Immigrant Juvenile ("SIJ") status, and remanded.

SIJ status provides a path to lawful permanent residency for at-risk children and requires a child to obtain a state-court order declaring him dependent or placing him under the custody of a court-appointed individual or entity. The state court must find that (1) "reunification with 1 or both . . . parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" and (2) it would not be in the child's "best interest to be returned to [his] parent's previous country." 8 U.S.C. § 1101(a)(27)(J). After obtaining a state court order, the child must obtain the consent of the Secretary of Homeland Security to the granting of SIJ status by filing an I-360 petition with the United States Citizenship and Immigration Services ("USCIS"). If USCIS grants the petition, the child may apply for adjustment of status, and a visa must be immediately available when he applies.

The en banc court noted that, under 8 C.F.R. § 1240.11(a)(2), an IJ is required to inform a petitioner subject to removal proceedings of "apparent eligibility to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

apply for any of the benefits enumerated in this chapter," and observed that this court's case law provides that the "apparent eligibility" standard is triggered whenever the facts before the IJ raise a reasonable possibility that the petitioner may be eligible for relief.

The en banc court concluded that the information presented during CJ's proceedings made it reasonably possible that he could establish eligibility for SIJ status. In this respect, the en banc court concluded that (1) his mother's comment that CJ's father left her a long time ago and CJ's statement that he had had no paternal contact for many years demonstrated that reunification with one parent might be impossible due to abandonment; and (2) the death threats CJ received from a gang in Honduras when he was 14 years old showed that returning to that country might not be in his best interest.

The en banc court rejected the government's contention that SIJ status is not a form of relief covered by the "apparent eligibility" standard of 8 C.F.R. § 1240.11(a)(2), explaining that a successful SIJ application plainly can lead to relief from removal and that the SIJ regulations are among those in the referenced subchapter. The en banc court also rejected the government's contention that an IJ is only required to advise a juvenile of potential eligibility for SIJ relief *after* the child has obtained a state court order, an approved I-360 petition from USCIS, and an immediately available visa. The en banc court concluded that this approach would eviscerate the utility of advice by the IJ and substantially undermine the core purpose of the IJ's duty to advise—to inform a minor of rights and avenues of relief *of which he may not yet be aware*.

The en banc court also observed that, although the IJ could not have granted CJ relief from removal at the time of the hearing, she could have continued the proceedings to allow him to apply for SIJ status. Noting that any eventual decision to grant or deny a continuance is within the discretion of the IJ, the en banc court stated that the IJ should exercise that decision in light of CJ's apparent eligibility for SIJ status and may now also consider how far CJ has proceeded in the SIJ process. Therefore, the en banc court granted the petition for review, vacated the removal order, and remanded for a new hearing before the IJ.

Finally, noting that CJ will be represented by counsel in future administrative proceedings, the en banc court stated that it need not address his contention that appointment of counsel for minors in removal proceedings is constitutionally required.

Concurring, Judge Paez wrote separately because he disagreed with the majority's decision to remain silent on the issue of a child's right to counsel in immigration removal proceedings. Judge Paez would reach the fundamental question raised in this proceeding: whether the Fifth Amendment's guaranty of due process entitles children to appointed counsel in immigration proceedings. He would hold that it does, for indigent children under age 18 who are seeking asylum, withholding of removal, relief under the Convention Against Torture, or another form of relief for which they may be eligible, such as SIJ status.

Concurring in part and concurring in the judgment, Judge Berzon wrote to note that consideration of the right to counsel question for minors in removal proceedings has been unnecessarily hindered by this court's decisions in *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016), *reh'g en banc*

*denied*, 908 F.3d 1157 (9th Cir. 2018) (Berzon, J., dissenting from denial of rehearing en banc), which held that the right to counsel question must be considered in a petition for review from an individual child's removal proceedings, and not through a class action filed in the district court. Judge Berzon wrote that a more developed factual record than is available here would have given the court more information on which to decide whether minors in removal proceedings have a right to counsel and whether that right is universal or may be limited to certain categories of cases. Judge Berzon wrote that the court was not answering any of those questions in this en banc proceeding, quite possibly because of qualms concerning fashioning the precise parameters of a right to counsel for minors in a single case. Accordingly, Judge Berzon observed that the court shut one door to the courthouse in *J.E.F.M.* on the promise of keeping another open, only to duck out of that door—for now—as well.

Dissenting, Judge Callahan, joined by Judge Ikuta, wrote that she must dissent because the majority required more of the IJ than was required or appropriate. Judge Callahan would hold that the information presented at CJ's hearing before the IJ did not create a reasonable possibility that CJ qualified for relief. In this respect, Judge Callahan wrote that this court has explained that an IJ is required to inform an alien only of his "apparent eligibility" *at the time of the hearing*.

Accordingly, Judge Callahan concluded that, even assuming that SIJ status is a "benefit" contemplated by this regulation, there was no such "apparent eligibility" at the time of CJ's hearing: CJ had not commenced any proceeding in a juvenile court, nor demonstrated any need or reason to do so. Nor was there any evidence indicating whether the Secretary of Homeland Security would consent

to an application by CJ, or that a visa was immediately available.

## COUNSEL

Ahilan T. Arulanantham (argued), ACLU Foundation of Southern California, Los Angeles, California; Aaron E. Millstein and Theodore J. Angelis, K&L Gates LLP, Seattle, Washington; Glenda M. Aldana Madrid and Matt Adams, Northwest Immigrant Rights Project, Seattle, Washington; Stephen Kang, ACLU Immigrants' Rights Project, San Francisco, California; for Petitioner.

Scott G. Stewart (argued) and W. Manning Evans, Senior Litigation Counsel; John W. Blakeley, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Nareeneh Sohbatian and John E. Schreiber, Winston & Strawn LLP, Los Angeles, California; Jonathan S. Goldstein, Winston & Strawn LLP, San Francisco, California; for Amicus Curiae Immigrant Legal Resource Center.

Anne Dutton, Eunice Lee, Karen Musalo, and Blaine Bookey, Center for Gender & Refugee Studies, San Francisco, California, for Amicus Curiae Center for Gender & Refugee Studies.

Robert A. Brundage and Lucy Wang, Morgan Lewis & Bockius LLP, San Francisco, California; Daniel Grunfeld, Morgan Lewis & Bockius LLP, Los Angeles, California; for

Amici Curiae Dr. Jennifer Woolard and Dr. Laurence Steinberg.

Lee Brand and Harrison "Buzz" Frahn, Simpson Thacher & Bartlett LLP, Palo Alto, California, for Amici Curiae Former Federal Immigration Judges.

David W. Schecter and Brian A. Procel, Miller Barondess LLP, Los Angeles, California, for Amici Curiae Professor Kevin Lapp, Associate Professor of Law, Loyola Law School, et al.

Eric Tuttle, Munger Tolles & Olson LLP, Los Angeles, California; Jonathan Meltzer, Munger Tolles & Olson LLP, Washington, D.C.; for Amici Curiae Constitutional Law and Procedure Scholars Judith Resnick and Brian Soucek.

**OPINION**

HURWITZ, Circuit Judge:

A gang held 14-year-old C.J.L.G. ("CJ") at gunpoint in his native Honduras and threatened to kill his family after he rejected recruitment attempts. CJ and his mother Maria then fled their homeland and sought asylum in the United States. Although finding CJ credible, an immigration judge ("IJ") denied his request for asylum and ordered him removed. The Board of Immigration Appeals ("BIA") dismissed CJ's appeal.

CJ petitions for review, arguing, among other things, that the IJ erred by failing to recognize he was an at-risk child potentially eligible for relief as a Special Immigrant Juvenile ("SIJ") and to so advise him. Because we conclude that the IJ erroneously failed to advise CJ about his eligibility for SIJ status, we grant the petition.

**I.  Background**

In June 2014, CJ and Maria were apprehended in Texas after entering the country without inspection. Because Maria was the subject of a prior removal order, separate removal proceedings were instituted against CJ.

At his initial hearing before an IJ in November 2014, CJ appeared with Maria but without counsel. When the IJ informed them that she would "not appoint an attorney for [CJ]" but that they had "the right to find an attorney . . . at [their] own expense," Maria said she did not "have money to pay for an attorney" but requested time to find one. Maria was unable to find counsel despite several continuances, and ultimately agreed to represent CJ herself. When Maria explained that CJ feared returning to Honduras "because of

the gangs," the IJ gave her an asylum application and questioned her about her son. In response to one question, Maria stated that CJ's father had left her long ago.

In June 2015, Maria filed the asylum application on CJ's behalf. She also sought withholding of removal and protection under the Convention Against Torture. The IJ accepted the application and set CJ's case for a hearing.

At that hearing, CJ testified that gang members threatened to kill him and other family members on three occasions after he rejected recruitment attempts. On the third occasion, CJ was held at gunpoint and given one day to decide whether to join the gang; he and Maria then fled Honduras. CJ testified that it had been "many years" since he had any contact with his father.

The IJ expressly found CJ credible but denied his applications for relief from removal. On appeal to the BIA, now represented by counsel, CJ contended that the IJ had erred by failing to appoint counsel or advise him about SIJ status. The BIA dismissed the appeal, concluding that, although the IJ must "inform the respondent of any apparent forms of relief from removal," CJ had not established eligibility for SIJ status. The BIA also found that it lacked jurisdiction to consider whether CJ had a constitutional right to appointed counsel.

A three-judge panel denied CJ's petition for review. *C.J.L.G. v. Sessions*, 880 F.3d 1122, 1150–51 (9th Cir. 2018). The panel held that CJ had no right to appointed counsel and that the IJ did not err in failing to inform CJ

about his potential ability to obtain SIJ status.[1]  *Id.* at 1147–50.  A majority of active judges voted to grant CJ's petition for rehearing en banc, and the panel opinion was vacated. *C.J.L.G. v. Sessions*, 904 F.3d 642, 642 (9th Cir. 2018).

## II.  Discussion

### A.

An IJ is required to inform a petitioner subject to removal proceedings of "apparent eligibility to apply for any of the benefits enumerated in this chapter."      8 C.F.R. § 1240.11(a)(2).  One of the benefits listed "in this chapter" is SIJ status.  *Id.* § 1245.1(a), (e)(2)(vi)(B)(3).

Congress created SIJ status in 1990 to provide a path to lawful permanent residency for certain at-risk children. Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5005–06; *see Bianka M. v. Superior Court*, 423 P.3d 334, 337–38 (Cal. 2018).  A child seeking SIJ protection must first obtain a state-court order declaring him dependent or placing him under the custody of a court-appointed "individual or entity."  8 U.S.C. § 1101(a)(27)(J)(i).  The state court issuing the order must find that (1) "reunification with 1 or both . . . parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" and (2) it would not be in the child's "best interest to be returned

---

[1] Judge Owens concurred, noting that the opinion "does not hold, or even discuss, whether the Due Process Clause mandates counsel for unaccompanied minors."   880 F.3d at 1151 (Owens, J., concurring) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1039–41 (9th Cir. 2016) (McKeown, J., joined by M. Smith, J., specially concurring)).

to [his] parent's previous country." *Id.* § 1101(a)(27)(J)(i)–(ii).**[2]**

After obtaining a state court order, the child must obtain the consent of the Secretary of Homeland Security to the granting of SIJ status by filing an I-360 petition with the United States Citizenship and Immigration Services ("USCIS"). *See id.* § 1101(a)(27)(J)(iii); 6 USCIS Policy Manual, pt. J, ch. 2(A), ch. 4(E)(1) (current as of Apr. 19, 2019). In reviewing an I-360 petition, "USCIS relies on the expertise of the juvenile court . . . and does not reweigh the evidence," but may deny relief if it determines that the state court order had no reasonable factual basis or was sought "primarily or solely to obtain an immigration benefit." 6 USCIS Policy Manual, pt. J, ch. 2(D)(5); *see* H.R. Rep. No. 105-405, at 130 (1997) (Conf. Rep.).

If USCIS grants the petition, the child may apply for adjustment of status. 6 USCIS Policy Manual, pt. J, ch. 4(A). A "visa must be immediately available" when he applies. 8 C.F.R. § 1245.2(a)(2)(i)(A); *see* 8 U.S.C. § 1153(b)(4) (establishing quota for SIJ visas). A child who is not in removal proceedings applies to USCIS for adjustment of status, *see* 8 C.F.R. § 245.2(a)(1), but one in removal proceedings must seek it from the IJ, *id.* § 1245.2(a)(1)(i); 6 USCIS Policy Manual, pt. J, ch. 4(A) n.2. If the child was the subject of a removal order before

---

**[2]** The dissent accurately notes that, at the time of his IJ hearing, CJ was with his mother and not adjudicated a dependent. Before 2008, regulations required the state court to find the minor eligible for foster placement before SIJ status could be awarded. 8 C.F.R. § 204.11(c)(4)–(5). But in that year, Congress replaced the foster placement requirement with the requirement that reunification with at least one parent be not viable. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044, 5079.

obtaining SIJ status, he cannot adjust status unless the IJ also vacates the removal order.  *See* 8 U.S.C. § 1182(a)(9)(A)(ii) (providing that a person under a removal order is inadmissible).   The IJ has discretion both in deciding whether to reopen removal proceedings, *see* 8 C.F.R. § 1003.2(a), and in whether to grant a subsequent adjustment application, *see* 8 U.S.C. § 1255(a).

## B.

The "apparent eligibility" standard of 8 C.F.R. § 1240.11(a)(2) is triggered whenever the facts before the IJ raise a "reasonable possibility that the petitioner may be eligible for relief." *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989).  A failure to advise can be excused only when the petitioner's eligibility for relief is not "plausible." *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1265–67 (9th Cir. 2013) (finding no prejudice from the IJ's failure to advise about eligibility to apply for voluntary departure because it was not "plausible" IJ would grant it); *United States v. Arrieta*, 224 F.3d 1076, 1082–83 (9th Cir. 2000) (finding prejudice from the IJ's advisement failure because excludability waiver under 8 U.S.C. § 1182(h) was "plausible").

The information presented during CJ's proceedings made it reasonably possible that he could establish eligibility for SIJ status.  Maria's comment that CJ's father left her "a long time ago," and CJ's statement that he had no paternal contact for "many years" demonstrated that reunification with one parent might be impossible "due to . . . abandonment." *See* 8 U.S.C. § 1101(a)(27)(J)(i).  And CJ's testimony about the death threats he received from the gang showed that returning to Honduras might not be in his "best interest." *See id.* § 1101(a)(27)(J)(ii).  Indeed, once he became aware of his potential eligibility for SIJ status, CJ

obtained the required state-court order and has now filed an I-360 petition.**[3]**

The government does not suggest that it was not reasonably possible at the time of CJ's hearing that he could obtain SIJ status or that the IJ was not aware of the facts suggesting CJ's eligibility for relief.  Rather, it contends that SIJ status is not a form of relief from removal covered by 8 C.F.R. § 1240.11(a)(2).  That argument fails.  A successful SIJ application plainly can lead to relief from removal, *see* 6 USCIS Policy Manual, pt. J, ch. 4(A), and SIJ regulations are among those in the referenced subchapter, 8 C.F.R. § 1245.1(a), (e)(2)(vi)(B)(3).

In the alternative, the government argues that the IJ is only required to advise a juvenile of potential eligibility for SIJ relief *after* the child has obtained a state-court order, an approved I-360 petition from USCIS, and an immediately available visa.  "We do not read the regulation so grudgingly. [It] obviously is meant to prompt the IJ to help an alien explore legal avenues of relief that might not be apparent to him or his attorney." *Moran-Enriquez*, 884 F.2d at 423.  To adopt the government's position here would require a minor to complete all but the final step for SIJ status—seeking adjustment of status from the IJ—before triggering the IJ's duty to advise him of SIJ eligibility.  This is a nonsensical approach.  It would eviscerate the utility of advice by the IJ and substantially undermine the core purpose of the IJ's duty

---

**[3]** We **GRANT** CJ's motion for judicial notice of the state-court order, but **DENY** his other requests for judicial notice (Dkt. 133).

to advise—to inform a minor of rights and avenues of relief *of which he may not yet be aware*.[4]

To be sure, CJ's eventual ability to obtain SIJ status depended on future decisions by a state court and USCIS. But the regulation speaks of "apparent eligibility," not certain entitlement. 8 C.F.R. § 1240.11(a)(2). We have made plain that "[t]he regulations do not require . . . a reviewing court to conclude that an alien would certainly qualify for relief." *Bui v. INS*, 76 F.3d 268, 271 (9th Cir. 1996). Thus, in *Bui*, we held that an IJ was required to advise Bui about potential eligibility for a waiver of excludability under 8 U.S.C. § 1182(h) even though the record did not show he could satisfy every element necessary to obtain relief. *Id.* To obtain the waiver, Bui had to show he had a U.S. citizen or permanent resident relative, and that the relative would suffer extreme hardship were Bui deported. *Id.* And, to adjust his status, Bui needed both the waiver and an immediately available visa approved by USCIS. *Id.* at 270–71 (citing 8 U.S.C. §§ 1182(h), 1255(a)). Although the record contained no evidence of hardship and the government argued that no visa would be available, the IJ nonetheless had a duty to advise because the record "raised an inference of the existence of relatives and the possibility of relief." *Id.* at 271. Indeed, we had previously explained that the advisement duty "[b]y definition" involves situations where, as here, the petitioner does not "make a complete showing of eligibility." *Moran-Enriquez*,

---

[4] We are mindful that the duty to advise minors about SIJ status "places a significant burden on already overburdened Immigration Judges." *Moran-Enriquez*, 884 F.2d at 423. But, "it is a burden clearly contemplated by the regulation promulgated by the Attorney General" and the statute passed by Congress. *Id.*

884 F.2d at 423; *see also Arrieta*, 224 F.3d at 1082–83 (holding that failure to advise was prejudicial because, "although the evidence produced by Mr. Arrieta does not guarantee that he would have been granted [the] waiver, it provides the 'something more' that makes it plausible that he would have received one").[5]

## C.

When the IJ fails to provide the required advice, the appropriate course is to "grant the petition for review, reverse the BIA's dismissal of [the petitioner's] appeal of the IJ's failure to inform him of this relief, and remand for a new [ ] hearing." *Bui*, 76 F.3d at 271; *see also Moran-Enriquez*, 884 F.2d at 423 (ordering remand). The government argues that we should not do so here because the IJ could not have granted the state court order, the I-360 petition, or a visa during the removal proceedings that are the subject of this petition for review. But that was precisely the situation in *Bui* and *Moran-Enriquez*. *See Bui*, 76 F.3d at 271 (remanding even though Bui might not be able to obtain a visa); *Moran-Enriquez*, 884 F.2d at 422–23 (same).

More importantly, although the IJ could not have granted CJ relief from removal at the time of the hearing, she could

---

[5] We have suggested that advisement may not be required if a petitioner would be eligible for relief only after a change in the law or a change in his personal circumstances. *See, e.g.*, *United States v. Lopez-Velasquez*, 629 F.3d 894, 901 (9th Cir. 2010) (en banc) (noting that Lopez could obtain relief "only with a change in law *and* the passage of eight months"); *United States v. Moriel-Luna*, 585 F.3d 1191, 1198 n.2 (9th Cir. 2009) (noting that Moriel-Luna "needed not only time but also to either marry his U.S.-citizen girlfriend or to have his parents successfully petition for citizenship"). This is not such a case.

have continued the proceedings to allow him to apply for SIJ status. Indeed, the BIA recently held that an IJ should do so when the child is "actively pursuing" the state-court order.**[6]** *See In re Zepeda-Padilla*, 2018 WL 1897722, at *1–2 (B.I.A. Feb. 16, 2018) (unpublished). The record makes plain that, once CJ was informed of eligibility for that status, he vigorously—and successfully—pursued the required order. And, had the IJ granted a continuance while CJ navigated the SIJ process, he would not currently be subject to a removal order. Because that order was entered, CJ's road to relief has become more difficult; even if he obtains SIJ status, he can apply for relief only if his removal proceedings are reopened. *See* 8 U.S.C. § 1182(a)(9)(A)(ii); *Bonilla v. Lynch*, 840 F.3d 575, 589 (9th Cir. 2016) (explaining that reopening vacates the removal order).

To be sure, any eventual "decision to grant or deny the continuance is within 'the sound discretion of the judge.'" *Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009) (quoting *Sandoval-Luna v. Mukasey*, 526 F.3d 1243, 1247 (9th Cir. 2008) (per curiam)). But the IJ should exercise that

---

**[6]** The Attorney General recently stated that, in assessing a motion for a continuance, "an immigration judge will generally need an evidentiary submission by the respondent, which should include copies of relevant submissions in the collateral proceeding, supporting affidavits, and the like." *Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 418 (A.G. 2018). But that general rule should not prevent the IJ from granting a continuance when, as here, the child is unaware of his apparent eligibility for relief until so advised, and thereafter diligently pursues relief. *See id.* at 412 (approving tribunals' use of "context-specific multifactor balancing tests, rather than attempting to craft bright-line, one-size-fits-all definitions"); *see also id.* at 413 ("The good-cause standard in section 1003.29 requires consideration and balancing of all relevant factors in assessing a motion for continuance to accommodate a collateral matter.").

discretion in light of CJ's apparent eligibility for SIJ status, something overlooked at the time of his hearing, and may now also consider how far he has proceeded in the process. We therefore grant the petition for review, vacate the removal order, and remand for a new hearing before the IJ.[7]

**PETITION GRANTED.**

---

PAEZ, Circuit Judge, joined by FLETCHER and BERZON, Circuit Judges, concurring:

I concur in the majority's opinion—as far as it goes. I agree that the Immigration Judge ("IJ") had a duty to advise CJ of his apparent eligibility for Special Immigrant Juvenile ("SIJ") relief. I write separately because I disagree with the majority's decision to remain silent on the issue of a child's right to counsel in immigration removal proceedings. As the majority acknowledges, CJ's asylum, withholding of removal, and Convention Against Torture ("CAT") claims may come back to this court. I would reach the fundamental question raised in this proceeding: whether the Fifth Amendment's guaranty of due process entitles children to

---

**[7]** Because CJ will be represented by counsel in future administrative proceedings, we need not address his contention that appointment of counsel is constitutionally required. Because we have vacated the order of removal, we also do not address the denial of CJ's asylum, withholding of removal, and CAT claims. If a new order of removal is entered, these issues (including any claim based on denial of counsel remaining after new proceedings before the IJ) can be addressed in a future petition for review. *See Singh v. Gonzales*, 499 F.3d 969, 975 (9th Cir. 2007) (holding that the court was not barred from reviewing a claim on a successive petition for review where "[t]here has never been a final judgment on the merits with respect" to that claim).

appointed counsel in immigration proceedings.  I would hold that it does, for indigent children under age 18 who are seeking asylum, withholding of removal, CAT, or another form of relief for which they may be eligible, such as SIJ status.[1]

## I.

The majority states that because CJ now has counsel, we need not address his argument that appointed counsel is constitutionally required for indigent children in removal proceedings.  That was the critical issue raised in the petition for rehearing en banc.  In *J.E.F.M. v. Lynch*, we stated that the only proper way for immigrant children to pursue their right to counsel claims was by exhausting the administrative process of their removal orders and then seeking review in federal court.    837 F.3d 1026, 1038 (9th Cir. 2016). "Following discussion at oral argument, to facilitate a test case," the government provided counsel in *J.E.F.M.* with "notice of any minor without counsel that the government is aware of ordered removed by an immigration judge following a merits hearing." *Id.* at 1037 n.10.  We described such a case as one where "a right-to-counsel claim [would be] teed up for appellate review." *Id.* at 1038.  Now, we have

---

[1] I consider the right to counsel for indigent children under age 18 because that is the age referenced in the parties' briefs. *See* Petitioner's Opening Brief at 24 n.9 ("This country's legal systems use the age of 18 more consistently than any other when marking the boundary between childhood and adulthood."); Respondent's Answering Brief at 38 (interpreting CJ's argument to be for children under 18 to receive the right to counsel).  I recognize, however, that immigration law applies age 21 as the boundary between eligibility for SIJ status or asylum status as the "derivative" of a parent's successful asylum application. *See, e.g.*, 8 U.S.C. § 1101(b)(1), *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1159 (9th Cir. 2004).

that case, and the majority inexplicably punts the question yet again.

Such cases are extremely difficult to bring, and I am aware of only one other in this circuit. *See id.* at 1037. About fifteen years ago, in *Guzman-Heredia v. Gonzales*, No. 04-72769 (9th Cir.), a child appeared pro se and was ordered removed. *J.E.F.M.*, 837 F.3d at 1037. Pro bono counsel raised the issue of the child's right to counsel before the Board of Immigration Appeals ("BIA"), but the case ultimately settled. *Id.* Since then, thousands of unrepresented children have been ordered removed. Transactional Records Access Clearinghouse, *Representation for Unaccompanied Children in Immigration Court* (Nov. 25, 2014), http://trac.syr.edu/immigration/reports/371/_(tracking over 27,000 children without counsel ordered removed in a ten-year span).[2] Until CJ's case arose through the *J.E.F.M.* discovery process, only *one* other child seeking appointed counsel had made it to this court of appeals. Because of children's lack of understanding of the immigration and appellate systems, as well as their youthful emotional and intellectual maturity levels, this is unsurprising.

---

[2] Transactional Records Access Clearinghouse ("TRAC"), a nonpartisan multi-year project affiliated with Syracuse University, reviews and presents data based on information from the government. Transactional Records Access Clearinghouse, *About the Project*, https://trac.syr.edu/immigration/about.html (last visited Feb. 27, 2019). The data reflects fiscal years, rather than calendar years. *See, e.g.*, Transactional Records Access Clearinghouse, *Children: Amid a Growing Court Backlog Many Still Unrepresented* (Sept. 28, 2017), https://trac.syr.edu/immigration/reports/482/.

## II.

Immigrant children "in deportation proceedings are entitled to the fifth amendment guaranty of due process." *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160 (9th Cir. 2004) (internal quotation omitted). This has been true "[f]or over one hundred years." *Id.* at 1161 (citing *Yamataya v. Fisher*, 189 U.S. 86 (1903)). Indeed, "every individual in removal proceedings is entitled to a full and fair hearing." *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc) (citing *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000)); *see also* 8 U.S.C. § 1229a(b)(4)(B). Due process rights persist regardless of whether the immigrant entered unlawfully, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), was apprehended soon after entry, *United States v. Raya-Vaca*, 771 F.3d 1195, 1202–03 (9th Cir. 2014), or has conceded removability and then seeks relief, *see, e.g.*, *Morgan v. Mukasey*, 529 F.3d 1202, 1205, 1211 (9th Cir. 2008).

A violation of the right to retained counsel is uniquely important, and thus we do not require a showing of prejudice to grant relief. Generally, immigrants must show prejudice when they argue a due process violation. *See Tamayo-Tamayo v. Holder*, 725 F.3d 950, 954 (9th Cir. 2013). But "an individual who is wrongly denied the assistance of counsel at the merits hearing need not show prejudice" at all. *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018) (citations omitted) (contrasting removal, i.e. merits, hearings from other interactions an immigrant may have with government agents); *see, e.g.*, *Montes-Lopez v. Holder*, 694 F.3d 1085, 1090 (9th Cir. 2012) (holding there was no need to show prejudice where an IJ denied an immigrant his right to counsel by failing to grant a continuance due to the absence of his retained counsel); *cf. Acewicz v. I.N.S.*,

984 F.2d 1056, 1062 (9th Cir. 1993) (recognizing that infringements of the right to counsel are prejudicial where counsel "could have better marshalled specific facts or arguments in presenting the petitioner's case for asylum or withholding of deportation" (citation omitted)). This is in part because "denial of counsel more fundamentally affects the whole of a proceeding than ineffective assistance of counsel." *Montes-Lopez*, 694 F.3d at 1092 (noting that "the absence of counsel can change an alien's strategic decisions, prevent him or her from making potentially-meritorious legal arguments, and limit the evidence the alien is able to include in the record").[3]

"The importance of counsel, particularly in asylum cases where the law is complex and developing, can neither be overemphasized nor ignored." *Reyes-Palacios v. I.N.S.*, 836 F.2d 1154, 1155 (9th Cir. 1988). For immigrant children, that is especially true. In *Jie Lin v. Ashcroft*, we held that a child was denied effective assistance of counsel, in violation of due process, by counsel's inept performance. 377 F.3d 1014, 1034 (9th Cir. 2004). There, the counsel's "lack of preparation prevented her from researching and presenting basic *legal* arguments fundamental to the asylum

---

[3] Other circuits have reached the same conclusion. *See Leslie v. Attorney Gen.*, 611 F.3d 171, 174–75 (3d Cir. 2010) (holding there was no need to show prejudice where IJ failed to inform immigrant of the availability of free legal services); *Montilla v. I.N.S.*, 926 F.2d 162, 169 (2d Cir. 1991) (declining to add a prejudice requirement where an IJ failed to notify an immigrant of his right to counsel and to provide him with a list of free legal services); *Castaneda-Delgado v. I.N.S.*, 525 F.2d 1295, 1300–01 (7th Cir. 1975) (rejecting the government's argument that immigrants must show prejudice when they had been given a continuance of less than 48 hours after being informed of the right to obtain counsel); *Cheung v. I.N.S.*, 418 F.2d 460, 464 (D.C. Cir. 1969) (holding there was no need to show prejudice when immigrant was given inadequate time to consider retaining counsel).

claim" and "her lack of investigation left her unable to present critical *facts* to support Lin's claim." *Id*. at 1024; *see also id*. at 1024–27. CJ's case poses the question: If an attorney's failure to investigate and research her child client's case can be a Fifth Amendment violation, *id*. at 1024, then how can a child without any counsel have a proceeding that comports with due process?

In other civil contexts where children face grave consequences, courts and legislatures have already answered this question: children have due process rights to appointed counsel. *See, e.g.*, *In re Gault*, 387 U.S. 1, 36–37 (1967) (civil juvenile delinquency proceedings that may result in commitment); *Kent v. United States*, 383 U.S. 541, 561 (1966) (civil proceedings seeking to transfer children to adult criminal courts); *In re Roger S.*, 569 P.2d 1286, 1296 (Cal. 1977) (civil proceedings for a child's commitment to state hospital); *see also* Cal. Welf. & Inst. Code § 366.26(f) (child's right to counsel in hearing terminating parental rights); Tex. Fam. Code Ann. § 107.012 (same).

Despite these background principles, at oral argument, the government refused to concede it would *ever* be appropriate to appoint counsel in order to have a "full and fair" deportation proceeding, including if a hypothetical two-year-old child were alone in court. Recording of Oral Argument at 29:41–32:47, *C.J.L.G. v. Barr*, No. 16-73801 (9th Cir. Dec. 10, 2018), https://www.ca9.uscourts.gov/media/view_video.php?pk_v id=0000014799 (responding negatively to inquiries about right to appointed counsel for a three-year-old, a two-year-old, and a baby in a basket).

I cannot ignore this mockery of judicial and administrative processes. There are thousands of very real children in removal proceedings without counsel. Data from August 2017 shows that four out of every ten children whose cases began in 2016 were unrepresented, where there were over 33,000 new cases—and that number rose to three out of every four children whose cases began in 2017, where there were about 19,000 new cases. Transactional Records Access Clearinghouse, *Children: Amid a Growing Court Backlog Many Still Unrepresented* (Sept. 28, 2017), https://trac.syr.edu/immigration/reports/482/. Many of them are fleeing persecution. CJ is fleeing threats from gangs, and his case demonstrates a child's need for counsel in removal proceedings so that the proceedings may be constitutionally "full and fair," especially where the child's proceedings are made even more complex by virtue of the child's potential eligibility for relief through SIJ status or asylum. *Oshodi*, 729 F.3d at 889.

## III.

Where due process interests are at stake in a child's removal proceedings, this court looks to the familiar test formulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Flores-Chavez*, 362 F.3d at 1160. The *Mathews* test recognizes three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail.

424 U.S. at 335.

When determining whether there is a right to counsel in civil proceedings, like here, the court must "set [the] net weight" of those three factors "against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." *Lassiter v. Dep't of Social Servs. of Durham Cty.*, 452 U.S. 18, 27 (1981). The *Lassiter* presumption is rebuttable. *Id.* at 31.

*Turner v. Rogers*, 564 U.S. 431, 446–48 (2011) further clarified the *Mathews* test for assessing whether due process requires counsel in civil proceedings. First, courts should look to whether the critical question at issue in the cases is straightforward. *Id.* (noting that the question of a defendant's indigence in a contempt proceeding is straightforward). Second, courts should consider whether there is an asymmetry of counsel. *Id.* at 446–47. Where one side is represented, it "could make the proceedings *less* fair overall, increasing the risk" of an erroneous decision. *Id.* at 447. Third, courts should look to the substitute procedural safeguards, such as adequate notice and a fair opportunity to present one's case. *Id.* at 447–48.

The test established in *Mathews*, elaborated upon in *Lassiter* and *Turner*, and applied in many other cases, requires courts to look at structural procedures that exist and those that are sought by a category of claimants—not the procedures applied in a single claimant's case. For example, when addressing the three factors in *Mathews*, the Court focused on the general social security disability benefit recipient. In assessing the private interest, the Court used

terms such as "a recipient" or "a [disabled] worker" and considered the average delay in payment of benefits. *Mathews*, 424 U.S. at 340–42; *see also Turner*, 564 U.S. at 446–49 (examining, generally "an indigent's right to paid counsel" in a contempt proceeding for failing to pay child support). In *Flores-Chavez*, we applied the *Mathews* test to determine whether notice of a child's removal proceedings must be provided to the adult with custody of the child. 362 F.3d at 1161. Under the first and third factors, we looked only at immigrant children generally, not the particular child's interests. *Id*. at 1161–62. Under the second factor, we treated Flores's case as "demonstrat[ive]," but we did not limit ourselves to Flores's facts. *Id*. at 1161.

I analyze the *Mathews* factors, with consideration of the *Lassiter* presumption and *Turner* factors, to assess the right to counsel for children under age 18 in removal proceedings, and I treat CJ's particular case as "demonstrative."

## A.

First, the private interest affected is "the loss of a significant liberty interest." *Flores-Chavez*, 362 F.3d at 1161. Courts have long recognized that "deportation is a penalty—at times a most serious one." *Bridges v. Wixon*, 326 U.S. 135, 154 (1945); *see also id.* at 164 (Murphy, J., concurring) ("The impact of deportation upon the life of an alien is often as great if not greater than the imposition of a criminal sentence.").

When a child may be deported, the interest is especially great. *See Jie Lin*, 377 F.3d at 1033 (accounting for a "minor's age, intelligence, education, information, and understanding and ability to comprehend" in removal proceedings). For an immigrant seeking asylum, withholding of removal, or CAT protection, the liberty

interest is greater still. *Oshodi*, 729 F.3d at 894 (noting, "the private interest could hardly be greater"). The impact of deportation could be persecution, including potential police beatings, torture, and sexual assault as in *Oshodi*, *id*. at 886, harm to a child and his family for failure to comply with a coercive government practice, as alleged in *Jie Lin*, 377 F.3d at 1021, or gun violence at the hands of gang members as in CJ's case.

A child in removal proceedings, especially a child with a claim for asylum, withholding of removal, or CAT relief, has a significant liberty interest. The first *Mathews* factor weighs in favor of CJ.

## B.

The second factor in *Mathews* is the risk of error and adequacy of the challenged procedures.

### *Risk of Error*

At the outset, the risk of error for children without counsel is high. Pro se children in immigration proceedings fare far worse than represented children. With counsel, children are nearly five times more likely to secure immigration benefits. From 2005 to 2014, only 10% of unrepresented children concluded their proceedings with an order permitting them to remain in the U.S., compared to 47% of represented children.[4] Transactional Records Access Clearinghouse, *New Data on Unaccompanied Children in Immigration Court*, Table 5 (July 15, 2014), http://trac.syr.edu/immigration/reports/359/. The disparity

---

[4] Courts have looked to statistics in recognizing a right to counsel in the past. *See In re Gault*, 387 U.S. at 22.

in outcomes for represented and unrepresented children was growing before the present administration. From 2012–2014, only 15% of unaccompanied children without an attorney were able to legally remain in the U.S., compared to 73% who had an attorney. Transactional Records Access Clearinghouse, *Representation for Unaccompanied Children in Immigration Court* (Nov. 25, 2014), http://trac.syr.edu/immigration/reports/371/.

CJ's own case serves as an example. He was denied relief despite having plausible asylum, withholding of removal, and CAT claims that counsel could have developed, in addition to seeking a continuance to pursue SIJ status, as the majority explains. To start, with respect to his asylum, withholding of removal, and CAT claims, CJ has a strong argument that he suffered past persecution because he was threatened multiple times, including once with a pistol pointed at his head. *See Ruano v. Ashcroft*, 301 F.3d 1155, 1160 (9th Cir. 2002) (finding past persecution where immigrant was "closely confronted" by men he knew to be armed). That the threats were perpetrated by gang members does not foreclose the possibility of immigration relief. *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083 (9th Cir. 2013) (holding that witnesses who testify against gang members may constitute a particular social group). CJ's hearing testimony, which the IJ found credible, was brief. With a more fully developed record, it could become clearer whether the persecution was based on a protected status. *See Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (noting that "simply asking the alien whether he has 'anything to add in support of his claim'" is insufficient record development (quoting *Colmenar*, 210 F.3d at 972)).

As amici, former IJs insist that the statistical data is not random, and the presence of counsel results in the different outcomes:

> In *amici*'s experience, only counsel can provide the time, commitment, and expertise to develop a child's case such that a full and fair hearing consistently takes place. And as *amici* observed every day from the bench, all else being equal, professional representation is the single largest factor in whether a minor successfully navigates the immigration court process.

Amicus Curiae Brief of Former Federal Immigration Judges at 12.

And this makes sense. "A child's age is far more than a chronological fact." *J.D.B. v. North Carolina*, 564 U.S. 261, 272 (2011) (quotation omitted) (holding that a child's age informs the *Miranda* custody analysis). A psychological study in the criminal context demonstrates that children, compared to adults, have less of an understanding of court procedures, their own rights, and the risks of their current circumstances, as well as less of an ability to reason about relevant information. Amicus Brief of Dr. Jennifer Woolard and Dr. Laurence Steinberg at 9 (citing T. Grisso et al., *Juveniles' competence to stand trial: A comparison of adolescents' and adults' capacities as trial defendants*, 27 Law and Human Behavior 333–63 (2003)). Participants ages 15 and younger in such a study performed comparably to "adults who are found incompetent to stand trial." *Id.* "The child requires the guiding hand of counsel at every step in the proceedings against him." *In re Gault*, 387 U.S. at 36 (quotation omitted).

Moreover, the law already recognizes that children require more procedural protections than adults in immigration proceedings.[5]   The regulatory framework "contemplates that no minor alien under age eighteen should be presumed responsible for understanding his rights and responsibilities in preparing for and appearing at final immigration proceedings." *Flores-Chavez*, 362 F.3d at 1157.  For instance, service on a child, without also serving the adult who has custody of the child, is not proper. *Id*.  IJs "shall not accept an admission of removability from an unrepresented respondent who is incompetent or under the age of 18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend." 8 C.F.R. § 1240.10(c).  Providing children with counsel in removal proceedings is the next logical step.

**Turner *Factors***

The *Turner* factors highlight the importance of counsel to deportation proceedings for children.

First, immigration law is exceedingly complex; it has been recognized as "second only to the Internal Revenue Code in complexity." *Castro-O'Ryan v. I.N.S.*, 847 F.2d 1307, 1312 (9th Cir. 1987) (quotation omitted); *see also* Dep't of Justice, *Immigration Court Practice Manual*

---

[5] The government points out that the Supreme Court has found unrepresented children capable of waiving their rights in other contexts. *Reno v. Flores*, 507 U.S. 292, 309 (1993) (waiving right to a custody hearing before an IJ); *Fare v. Michael C.*, 442 U.S. 707, 724–27 (1979) (waiving right against self-incrimination in criminal cases).  However, when analyzing a waiver of the right to counsel in a removal hearing, this court factors "the minor's age, intelligence, education, information, and understanding and ability to comprehend" into its analysis. *Jie Lin*, 377 F.3d at 1033.

(2018),        https://www.justice.gov/eoir/page/file/1084851/
download (underscoring the complexity of pro se
representation in immigration proceedings by taking nearly
thirty pages to explain immigration court filings and nearly
forty pages to explain a hearing before an IJ, while still not
serving "in any way, [as a] substitute for a careful study of
the pertinent laws and regulations").        Asylum and
withholding claims that involve proving persecution on
account of a particular social group are complicated for
lawyers and courts, let alone children. *See Reyes-Palacios*,
836 F.2d at 1155 ("The importance of counsel, particularly
in asylum cases where the law is complex and developing,
can neither be overemphasized nor ignored."). Second, there
is an asymmetry of counsel, as trained government attorneys
serve as prosecutors in every removal case. *See Turner*,
564 U.S. at 447 (recognizing that an "asymmetry of
representation" can "alter significantly the nature of the
proceeding" (quotation omitted)).        Third, as explained
below, substitute procedural safeguards, such as the right to
retain private counsel, the IJ's duty to develop the record,
and the presence of a parent, are inadequate.

### *Existing Procedures*

Under existing procedures, an immigrant has "the
privilege" of being represented by counsel of his choosing,
at no expense to the government.        8 U.S.C.
§ 1229a(b)(4)(A).  An IJ must explain hearing procedures
and, where the immigrant is pro se, "fully develop the
record." *Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir.
2002) (quoting *Jacinto v. I.N.S.*, 208 F.3d 725, 733–34 (9th
Cir. 2000)).  The IJ must also "inform immigrants of any
ability to apply for relief from removal and the right to
appeal removal orders." *J.E.F.M.*, 837 F.3d at 1036–37
(citation omitted).  And, in CJ's case, he was not alone

because he had his mother's assistance. These procedures are a start, but they are not enough.

First, the privilege of paying for counsel or luck of acquiring pro bono counsel is not a substitute for a right to counsel in removal proceedings. Immigrants in removal proceedings have a right to retain counsel, and the IJ must advise immigrants of this right and the availability of pro bono legal services. 8 C.F.R. § 1240.10(a). But the ability to pay for counsel is little solace to an indigent child. The list of pro bono attorneys the IJ provides cannot fill the need for counsel. Between 2005 and 2014, IJs issued decisions in almost 30,000 cases where children did not have counsel. Transactional Records Access Clearinghouse, *New Data on Unaccompanied Children in Immigration Court*, Table 5 (July 15, 2014), http://trac.syr.edu/immigration/reports/359/. CJ's experience bore this problem out; his mother Maria indicated she tried to find counsel to no avail.[6] *See* Amicus Curiae Brief of Former Federal Immigration Judges at 19 (former IJ amici noting that CJ was in a "better" position than most children to obtain pro bono counsel and was still unable to do so).

Second, an IJ is not a substitute for counsel in removal proceedings. IJs are tasked with ensuring a modicum of due process in immigration proceedings in various ways, such as by developing the record themselves or by granting continuances for counsel to develop the record. These

---

[6] That CJ was able to obtain appellate counsel is inapposite. Appellate counsel cannot develop the record in immigration proceedings. *See* 8 C.F.R. § 1003.1(d)(3)(iv). A reviewing court cannot conduct factfinding outside of the administrative record. *Fisher v. I.N.S.*, 79 F.3d 955, 963 (9th Cir. 1996). An inadequate record may lead to the expulsion of children from this country who could otherwise have obtained relief with a more robust record.

safeguards have never been a substitute for counsel and recent developments in immigration law have undermined them further.

IJs are "neutral fact-finder[s]." *Reyes-Melendez v. INS*, 342 F.3d 1001, 1008 (9th Cir. 2003). But immigration "proceedings are adversarial in nature." *Jacinto*, 208 F.3d at 733. While IJs "are obligated to fully develop the record" where an immigrant appears without counsel, *id.* at 734, the IJ cannot be a child's advocate, 5 C.F.R. § 2635.101(b)(8). An IJ is ethically bound to "act impartially and not give preferential treatment to any . . . individual." *Id.* Moreover, the volume of cases on an IJ's docket severely limits the IJ's capacity to develop the record. The former Attorney General asked each IJ to complete "at least 700 cases a year." Jeff Sessions, Attorney General, Remarks to the Executive Office for Immigration Review Legal Training Program in Washington, D.C. (June 11, 2018) (remarks available at https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-remarks-executive-office-immigration-review-legal). Recently, by vacating a BIA decision that required a full evidentiary hearing for an asylum-seeker, the Attorney General signaled to IJs that they need not develop the record beyond merely asking whether information in the asylum application is true and correct. *Matter of E-F-H-L-*, 27 I. & N. Dec. 226 (A.G. 2018), *vacating* 26 I. & N. Dec. 319 (BIA 2014); *but see Lacsina Pangilinan*, 568 F.3d at 709. Given this enormous workload, the idea that every unrepresented child in immigration proceedings will have a full and fair hearing at which the IJ develops the record strains credulity. Nor is record development at a hearing the only role of an attorney. *See Jie Lin*, 377 F.3d at 1024–25 (discussing how an effective attorney would investigate factual and legal bases for a claim *before* the hearing).

Third, parents are not a substitute for counsel in removal proceedings. "It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Johns v. Cty. of San Diego*, 114 F.3d 874, 876–77 (9th Cir. 1997) (quoting *Osei-Afriyie v. Medical College*, 937 F.2d 876, 882–83 (3d. Cir. 1991) (refusing to allow a parent to bring an action on behalf of his child without retaining a lawyer)); *see also Franco-Gonzales v. Holder*, 828 F. Supp. 2d 1133, 1147 (C.D. Cal. 2011) (holding that the father of a mentally incompetent immigration detainee could not serve as his representative at a custody hearing because he "lacks adequate knowledge, information, and experience in immigration law and procedure." (internal quotation omitted)).[7]

---

[7] The government argues that parents are helpful in court proceedings. Acknowledging parents' lack of knowledge of immigration law here, however, does not conflict with other situations where parents could be helpful to the proceedings. *See e.g.*, *Heller v. Doe*, 509 U.S. 312, 331 (1993) (recognizing that parents have information valuable to the court in commitment proceedings for mentally disabled people). Nor does acknowledging that parents may not be knowledgeable of immigration law contradict cases cited by the government concerning the rights of parents to make decisions about the care and custody of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (recognizing the right of a parent to make choices about certain individuals' visitation to her children); *United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012) (noting that parents may make decisions about naturalizing their child). It also is bizarre to argue that a parent representative serves the best interests of her child in a case like CJ's where the parent did not choose to represent her child, but was forced to by indigence and did so only after expressing a desire for counsel for her child.

Categorically, not all children in immigration court will be with a parent, but CJ's case demonstrates how even a well-meaning parent cannot act as a lawyer.[8] Maria did not understand all of the IJ's instructions or questions. She submitted an asylum application replete with errors and garbled language. And she neither asked CJ questions to develop the record, nor submitted any evidence other than CJ's birth certificate. The IJ never gave CJ the opportunity to waive his right to counsel or weigh in on whether he wanted Maria to represent him. *See Jie Lin*, 377 F.3d at 1032–33 (looking for record evidence that the child in deportation proceedings "knowingly and intelligently waived his Fifth Amendment right to counsel, particularly in light of the added protections he is due as a minor"). Further, it is possible that the presence of a parent could diminish the fairness of a hearing under circumstances where the child was less willing to share critical information in the presence of his parent, such as if the child faced persecution on the basis of a sexual orientation that was contrary to his parent's

---

[8] Where a child accompanies a parent seeking refugee or asylee status, they usually may apply for legal status together. In such a situation, the child seeks "derivative" status of the parent. *See* Dep't of Homeland Sec'y, *Form I-589 Instructions* (2017); U.S. Citizenship and Immigration Servs., *Obtaining Derivative Refugee or Asylee Status for Children*, https://my.uscis.gov/exploremyoptions/ obtain_refugee_asylum_status_for_children (last updated Jan. 28, 2019). That was not the case here; CJ was not a derivative of his mother's asylum application. CJ was in a separate asylum proceeding and filed his own application, with the help of his mother and possibly a notario. *See* American Bar Ass'n, *About Notario Fraud* (July 19, 2018), https://www.americanbar.org/groups/public_services/immigration/proje cts_initiatives/fight-notario-fraud/about_notario_fraud/. I do not consider the right to counsel for children who are eligible to apply for asylum as the derivative of a parent or relative.

religious beliefs. *See* Amicus Curiae Brief of Former Federal Immigration Judges at 17–18.

The presence of a parent at a child's immigration proceedings does not overcome the asymmetry of counsel problem and is not an adequate substitute safeguard. *See Turner*, 564 U.S. at 446–47.

\*\*\*

At bottom, the risk of error in a removal proceeding where an unrepresented child is seeking relief is high. A child faces a maze of exceedingly complex laws in a foreign country and foreign language. The proceedings are lopsided because the government is represented. And the abstract possibility of finding or affording private counsel, the record-development duty of neutral IJs, and the chance that a child will have an adult who does not understand immigration law with him, all fail as procedural safeguards.

## C.

The third *Mathews* factor requires consideration of the burdens that requiring government-funded counsel for indigent children may place on the administrative process. "[C]onserving scarce fiscal and administrative resources is a factor that must be weighed," but "[f]inancial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision." *Mathews*, 424 U.S. at 348. The government also has an interest in fair proceedings and correct decisions. *Lassiter*, 452 U.S. at 27–28; *Flores-Chavez*, 362 F.3d at 1162 (recognizing that it is a "great benefit" to the government to have children attend their removal proceedings rather than be ordered removed in absentia).

Undoubtedly, providing counsel to immigrant children at government expense would be costly.  Notably, the government already chooses to spend money on attorneys to prosecute children in removal proceedings.  An attorney representing the government was present at all five of CJ's hearings in immigration court—and an earlier hearing for which the IJ had not provided CJ notice.  At each hearing, there was a different government attorney.  In other words, the government has chosen to spend money on multiple attorneys learning the case file of and prosecuting one immigrant child.  Further still, the government continued to pour resources into arguing that CJ has no right to counsel in a BIA appeal, argument before a three-judge panel of this court, and argument before this en banc court, which, at the end of the day, corrects a due process violation that may have been prevented had CJ been provided counsel in immigration court in the first instance.

Providing counsel would be costly to the government, but the government already chooses to undertake similar costs here.**[9]**  It would also lead to fairer, more accurate

---

**[9]** In addition to funding government prosecutors in removal proceedings, the federal government also chooses to fund attorneys for some immigrants in some proceedings.  For example, the National Qualified Representative Program provides representation to unrepresented and detained mentally incompetent individuals and the Baltimore Representation Initiative for Unaccompanied Children "funds direct representation in immigration proceedings at the Baltimore Immigration Court for unaccompanied children under age 16 and whose cases are not joined with an adult's (regardless of the child's eligibility for immigration relief)." Department of Justice, Federal Agency Resources (Oct. 24, 2018), https://www.justice.gov/olp/federal-agency-resources (describing federal grant programs "and other Federal resources").  In *J.E.F.M.*, we recognized projects "the Executive ha[d] taken" to confront the lack of legal representation for children including awarding $1.8 million to 100 legal fellows to represent children in

decisions—decisions that a broader public might view as more legitimate.  The third factor in the *Mathews* test therefore points both directions.  To the extent this factor favors the government, it cannot balance the scales weighed down with children's liberty interests and a high risk of error.

## D.

Finally, the outcome of the *Mathews* analysis must be weighed against a presumption that the right to appointed counsel is only afforded to individuals whose "physical liberty" is at risk if they lose.  *Lassiter*, 452 U.S. at 26–27.  Here, that outcome, especially given the strength of the first and second factors, overcomes the *Lassiter* presumption.

Sending child asylum-seekers back to hostile environments where they may have experienced persecution implicates a forceful liberty interest.  In CJ's case, for example, his physical liberty is at risk—not because of incarceration—but because of the death threat and other threats of violence made against him.  CJ credibly testified that gang members pointed a pistol to his forehead, said he had one day to decide whether to join them, and that if he told his mother—as he evidently did before fleeing with her—they would kill him.

Moreover, the disparity of outcomes between children who are represented and those who are not represents an unconscionable risk of error.  As diligent as IJs are, they cannot be the children's advocates and, as former IJs have

removal proceedings through the Justice AmeriCorps program.  837 F.3d at 1040–41 (citation omitted).

said, there is no substitute for counsel. *See* Amicus Curiae Brief of Former Federal Immigration Judges at 12, 16.

## IV.

Children do not need to be "left to thread their way alone through the labyrinthine maze of immigration laws." *J.E.F.M.*, 837 F.3d at 1040 (McKeown, J., specially concurring). In fact, due process prohibits this reality. I would recognize a due process right to counsel for indigent children in removal proceedings. Based on the record presented, I would limit the class of indigent children under 18 who are required appointed counsel to those who are seeking asylum, withholding of removal, CAT, or another form of relief for which they are apparently eligible, such as SIJ status. As the Supreme Court said when recognizing a right to appointed counsel for children in another context, "[u]nder our Constitution, the condition of being a boy does not justify a kangaroo court." *In re Gault*, 387 U.S. at 28.

BERZON, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the majority's opinion and also join Judge Paez's excellent concurrence in full. I wish only to note, once again, that consideration of the right to counsel question for minors in removal proceedings has been unnecessarily hindered by this court's decisions in an earlier case. *See J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016), *reh'g en banc denied*, 908 F.3d 1157 (9th Cir. 2018) (Berzon, J., dissenting from denial of rehearing en banc).

*J.E.F.M.* held, erroneously in my view, that the right to counsel question must be considered in a petition for review

from an individual child's removal proceedings, such as this one, and not through a class action filed in the district court. 837 F.3d at 1038. But as this case amply demonstrates, a more developed factual record than is available here—where C.J. had no counsel in his removal proceedings and where the Immigration Judge and the Board of Immigration Appeals had no jurisdiction over the constitutional due process question, *see Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006)—would have given us more information on which to decide whether minors in removal proceedings have a right to counsel. Such a record would also have aided in deciding whether that right is universal or, as Judge Paez suggests, may be limited to certain categories of cases, based on such criteria as the claims raised, the age of the child, or whether the child is accompanied or not.

We are not answering any of those questions in this en banc proceeding, quite possibly because of qualms concerning fashioning the precise parameters of a right to counsel for minors in a single case. So we shut one door to the courthouse in *J.E.F.M.* on the promise of keeping another open, only to duck out of that door—for now—as well.

---

CALLAHAN, Circuit Judge, joined by IKUTA, Circuit Judge, dissenting:

The majority commendably decides this appeal on a narrow issue. Unfortunately, it requires more of the Immigration Judge (IJ) than is required or appropriate, and accordingly, I must dissent.

As noted by the majority, an IJ is required to inform an alien seeking relief from removal of his "apparent eligibility

to apply for any benefits enumerated in this chapter."
8 C.F.R. § 1240.11(a)(2).  The majority then concludes that
because the "information presented during CJ's proceedings
made it reasonably plausible that he could establish
eligibility for SIJ status," Maj. Op. at 12, the IJ failed to
provide "the required advice," and the appropriate remedy is
to grant the petition for review, reverse the BIA's dismissal
of the appeal, and remand for a new hearing. *See* Maj Op. at
15.  The asserted remedy flows from the premise, but the
premise is a step too far.  I would hold that the information
presented at CJ's hearing before the IJ did not create a
reasonable possibility that CJ qualified for relief.

An IJ "shall inform the alien of his or her apparent
eligibility to apply for any of the benefits enumerated in this
chapter and shall afford the alien an opportunity to make
application during the hearing, in accordance with the
provisions of § 1240.8(d)."  8 C.F.R. § 1240.11(a)(2).[1]  We

---

[1] It is far from clear that "SIJ status" (which the majority uses to
refer to the criteria required for an alien to be deemed a "special
immigrant" under 8 C.F.R. § 204.11 and U.S.C. § 1101(a)(27)(J)),
constitutes one "of the benefits enumerated in this chapter" for purposes
of 8 C.F.R. § 1240.11(a)(2). The regulation at issue, 8 C.F.R. § 1240.11,
is contained in Chapter V, "Executive Office for Immigration Review,"
which establishes a number of immigration benefits, including asylum,
withholding of removal, adjustment of status, and temporary protected
status. However, the regulatory section that explains special immigrant
status, 8 C.F.R. § 204.11, is contained in Chapter I, Department of
Homeland Security. In other words, special immigrant status is not a
benefit of the chapter at issue in § 1240.11(a)(2).

Moreover, special immigrant status is not analogous to the
immigration benefits described in Chapter V. Each of those benefits are
forms of relief from removal. By contrast, a determination that an alien
qualifies for special immigrant status provides no relief itself. Rather,
the alien who qualifies for SIJ status can then seek relief from removal

have held that this is a mandatory duty: "if an IJ fails to advise an alien of an avenue of relief potentially available to him, we will remand for consideration of the alien's eligibility for that relief." *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989); *United States v. Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998) (holding that "[t]his provision is mandatory"). However,

> IJs are not expected to be clairvoyant; the record before them must fairly raise the issue: "'Until the [alien] himself or some other person puts information before the judge that makes such eligibility "apparent," this duty does not come into play.'" *Bu Roe v. INS*, 771 F.2d 1328, 1334 (9th Cir.1985) (quoting *United States v. Barraza-Leon*, 575 F.2d 218, 222 (9th Cir. 1978)).

*Moran-Enriquez*, 884 F.2d at 423. Moreover, as we have explained, "an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief *at the time of the hearing*," or, in some narrow circumstances, where the alien may become eligible imminently. *United States v. Lopez-Velasquez*, 629 F.3d 894, 895 (9th Cir. 2010).

The majority assumes that § 1240.11(a)(2) applies to SIJ status and then asserts that a failure to advise about SIJ status can only be excused when the petitioner's eligibility is not

---

by applying for adjustment of status. 8 U.S.C. 1255(a). The alien can obtain relief only if "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and an immigrant visa is immediately available to him at the time his application is filed."

"plausible." They then opine that "Maria's comment that CJ's father left her 'a long time ago,' and CJ's statement that he had no paternal contact for 'many years' demonstrated that reunification with one parent might be impossible 'due to . . . abandonment.'" Maj. Op. at 12. Perhaps reunification with CJ's father was extremely unlikely, but that was not the issue before the IJ.

Reasonableness or plausibility should be considered in a particular context.[2] The applicable statute, 8 U.S.C. 1101(a)(27)(J)(i), sets forth three requirements that CJ cannot reasonably or plausibly meet. First, the statute requires that the petitioner "*has been declared dependent on a juvenile court* located in the United States or whom *such a court* has legally committed to, or placed under the custody

---

[2] The majority's invocation of the term "plausible" from our opinion in *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1265–67 (9th Cir. 2013), should not be read as an expansion of the "reasonable possibility" standard set forth in *Moran-Enriquez*, 884 F.3d at 423. In *Rojas-Pedroza*, we explained that the standard for relief due to an IJ's failure to inform a petitioner of apparent eligibility for relief has two steps: first, is the petitioner's eligibility of relief "apparent"; and second, was the petitioner prejudiced by the failure? *Rojas-Pedroza*, 716 F.3d 1262–63. We reiterated our prior statement that "apparent eligibility" means "where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws—as IJs no doubt are—raises a reasonable possibility that the petitioner may be eligible for relief." *Id.* (quoting *United States v. Lopez-Velasquez*, 629 F.3d at 897). Recognizing some ambiguity as to whether Rojas "had apparent eligibility for relief," we focused on the second component: prejudice. In the context of whether Rojas had established a plausible case for discretionary relief by the IJ, we concluded in light of his immigration record and prior convictions he had "failed to carry his burden of establishing plausible grounds for relief." *Rojas-Pedroza*, 716 F.3d at 1266–67. Thus, nothing in *Rojas-Pedroza* suggests that a petitioner does not have to show a "reasonable possibility" that he is apparently eligible for relief.

of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States." *Id.* (emphasis added). Here, at the time of his immigration hearing, CJ had not been declared a dependent by any court in the United States or placed in custody by any court. Indeed, he had not even commenced any such proceeding in any court.

Second, the statute, requires that the juvenile's "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J)(i). If this statute is read to require a showing that reunification with neither parent is viable, then there was no possibility of CJ meeting the requirement. He has always been in his mother's custody and care. If the statute is read to require only a showing that reunification with one of two parents is not viable, then CJ could meet this requirement. However, he still could not have shown that any court had declared him a dependent.

Third, the statute requires that "the Secretary of Homeland Security consents to the grant of special immigrant juvenile status." *Id.* § 1101(a)(27)(J). Although neither the statute nor the regulations provides much guidance on what is required for consent, the USCIS has promulgated a policy manual, which provides that before consenting, USCIS must review the juvenile court order to conclude that the request for SIJ classification is bona fide. *See* USCIS Policy Manual, vol. 6, pt. J, ch. 2, D.5. (May 23, 2018); 76 Fed. Reg. 54978, 54985 (Sept. 6, 2011). The USCIS will not give its consent if the juvenile court order was sought primarily or solely to obtain an immigration benefit. *See* USCIS Policy Manual, vol. 6, pt. J, ch. 2, D.5. Here, the record indicates that the alien's mother would seek

to have CJ placed under her custody solely for the purpose of seeking SIJ status and adjustment of status to avoid deportation.

The majority's application of the reasonable or plausible standard overlooks the statute's three requirements. First, the majority overlooks the requirement that to be eligible for SIJ status, a state court must have declared the applicant a dependent, and thus imposes an unreasonable burden on IJs. The majority tasks the IJ with predicting not whether it is plausible that were CJ to apply to a state court he might obtain relief, but whether it was "reasonably possible at the time of CJ's hearing that he could obtain SIJ status." Maj. Op. at 13. But this would require that IJs have an intimate knowledge of state law. Moreover, in CJ's case—aside from immigration proceedings—there was no apparent need or reason for CJ to invoke any state's dependency proceedings as he was at all times in his mother's custody and care.[3]

Indeed, at the time of CJ's hearing before the IJ it was not clear whether California courts would consider a child's request for SIJ findings. It was not until 2018 that the California Supreme Court clarified that "a conclusion that a proceeding is primarily motivated by a desire to secure SIJ

---

[3] The fact that CJ has subsequently obtained a state-court order and has filed a petition with the United States Citizenship and Immigration Services speaks well of his attorneys. But his success does not change the fact that when CJ appeared before the IJ with his mother, there was no reasonable possibility, under the controlling legislation, that he was eligible for immigration relief.

findings is not a ground for declining to issue the findings." *Bianka M. v. Superior Court*, 5 Cal. 5th 1004, 1025 (2018).[4]

The majority also overlooks the consent requirement. The state court's dependency determination is not controlling. Even after obtaining such an order, the alien must file a petition with the USCIS, and the Secretary of Homeland Security must consent to the grant of special immigrant juvenile status. As noted above, it is far from clear that the Secretary would give such consent.

Finally, the majority overlooks the fact that even after obtaining such consent, the alien must then seek relief from removal by applying for adjustment of status. 8 U.S.C. § 1255(a). The alien is not eligible for such relief unless "an immigrant visa is immediately available to [the petitioner] at the time his application is filed." The record does not show that an immigrant visa is available to CJ. And even then, the IJ must determine whether to grant relief as a matter of discretion. *See id.*

In sum, the IJ was required to inform CJ only of his "apparent eligibility to apply for any benefits enumerated in this chapter," 8 C.F.R. § 1240.11(a)(2), "at the time of the hearing." *Lopez-Velasquez*, 629 F.3d at 895. Even assuming that SIJ status is a "benefit" contemplated by this regulation, there was no such "apparent eligibility" at the time of the hearing here. CJ had not commenced any proceeding in a juvenile court, nor demonstrated any need or reason to do so. Nor was there any evidence indicating whether the Secretary

---

[4] The California Supreme Court further noted that "the Legislature in 2016 amended Code of Civil Procedure section 155 to make clear that a court must issue findings relevant to SIJ status, if factually supported, regardless of its assessment of the child's perceived motivations in invoking the court's jurisdiction." *Id*. at 1024.

of Homeland Security would consent to an application by CJ, or that a visa was immediately available. In sum, at the time of the hearing, CJ had no apparent eligibility for benefits.

The majority's empathy for CJ is understandable, but does not, in my mind, justify defining "apparent eligibility" so broadly as to require IJs to advise petitioners of potential avenues of relief for which they are not yet (and may never be) statutorily eligible. Accordingly, I dissent.